[No. 14380. In Bank. — March 30, 1892.]

S. C. MARTIN ET AL., RESPONDENTS, v. LEWIS M. LLOYD ET AL., APPELLANTS.

QUIETING TITLE — BURDEN OF PROOF. — In an action to quiet title, the plaintiffs are called upon to show title in themselves.

DEED — EXCEPTIONS — DESCRIPTION OF EXCEPTED PREMISES — NAME OF EXCEPTED PLACE — REFERENCE TO CONTRACT OF SALE — BOUNDARY BY ROAD. — Where a deed excepts land contracted to be sold to third parties, and describes the land excepted by name, and also specifies a boundary as extending to the southwest corner of land situated on the east side of a road, "thence N. to Graveyard barranca," and the contract of sale referred to describes the land by the same name, and bounds it on the east by the road, and by a continuation of the west line thereof northerly to the barranca, the exception must be construed as conforming to the description in the contract, and to the actual boundaries of the place named, and not as describing a due north line, regardless of the road as a boundary.

ID. — MEANING OF "NORTH." — Assuming that the letter "N.," in the exception of the deed, stands for "north," such word means "due north" only when that construction is necessary for certainty, or when there is nothing else to show that it was not used in that strict sense.

ID. — INTENTION OF PARTIES. — The intention of the parties is the main thing to be ascertained; and when the language used is not absolute, it must be construed with reference to the situation of the parties, and the character and condition of the subject-matter of the contract.

ID. — GENERAL DESCRIPTION — CERTAINTY — CONTROL OF UNCERTAIN PARTICULAR DESCRIPTION. — When a general description is certain, and a particular description uncertain, the general description must prevail; and an exception of a place by name shows the intent of the parties to except the actual place named, and not by an uncertain description of boundaries to limit the actual boundaries of the excepted place.

ID. — RESERVATION CONSTRUED FAVORABLY TO GRANTOR — IRRECONCILABLE PARTS OF GRANT. — A reservation in a grant is to be interpreted in favor of the grantor, and the general rule is, that if two parts of a grant are irreconcilable, the first prevails.

Id. — Reference to Unrecorded Contract of Sale — Notice to Grantee. — The exception made in the deed of land contracted to be sold by name to third parties named in the exception put the grantee upon inquiry as to the location of the boundaries of the excepted place, and is equivalent to actual notice thereof; and it is immaterial that the contract was not recorded until after the purchase was made.

Id. — Notice to Successors in Interest of Grantee. — The successors in interest of the grantee named in the deed containing the exception are in the same position with respect to notice of the boundaries of the excepted place as the original grantee.

Quieting Title — Evidence — Judgment of Foreclosure inter Alios. — In an action to quiet title, the defendants cannot introduce in evidence a judgment roll in an action to foreclose a mortgage on premises not purporting to be the same as those in controversy, and to which the plaintiff was neither party nor privy.

Trial — Practice — Reservation of Ruling. — The better practice is for the trial court to rule upon questions involving the admissibility of evidence as they arise, unless the determination of the merits of the case depends upon the ruling. Whether the practice of reserving rulings is ground for reversal in any given case must depend upon the particular circumstances of the case.

Appeal from a judgment of the Superior Court of Ventura County.

The facts are stated in the opinion of the court.

*Blackstock & Shepherd,* for Appellants.

This being an action to quiet title, the plaintiffs must show title in themselves. The deed from Snodgrass cannot be avoided in this action on the ground that it was made under a mistake of facts. (*Bonds* v. *Hickman,* 29 Cal. 460; *Carey* v. *Brown,* 58 Cal. 183.) The words of description in the deed are plain, and require no interpretation, and therefore parol evidence of the terms was inadmissible. (*Cox* v. *McLaughlin,* 63 Cal. 205; *Truett* v. *Adams,* 66 Cal. 223; *Dent* v. *Bird,* 67 Cal. 654.) The evidence offered to show a mistake in the deed should not have been admitted, as the action was one to quiet title simply, and a mistake in the description of a conveyance cannot be corrected in an action to quiet title. (*Brewer* v. *Houston,* 58 Cal. 345; *Von Drachenfels* v. *Doolittle,* 77 Cal. 295.) The evidence was also inadmissible, because the deed was neither ambiguous nor uncer-

tain.  (*Fratt* v. *Woodward,* 32 Cal. 229; 91 Am. Dec. 573; *Irving* v. *Cunningham,* 66 Cal. 15.)   Where the description in a deed closes with a clause which clearly and unequivocally sums up the intention of the parties as to the particular property conveyed, such clause has a controlling effect upon all the antecedent phrases in the description.  (Devlin on Deeds, secs. 1039, 1040.)   The description which included only sixty acres should prevail, even it there be a conflict.   If there were a repugnance, that description most favorable to the grantee should be adopted.  (*Vance* v. *Fore,* 24 Cal. 436; *Hager* v. *Spect,* 52 Cal. 579.)   The court erred in reserving its rulings upon the evidence offered.   A decision should not be reserved upon the admissibility of testimony against the objection of parties, at least if the trial is to proceed.   (Hayne on New Trial and Appeal, p. 123, sec. 36, and authorities cited.)

*W. H. Wilde,* and *J. Hamer,* for Respondents.

The "Dunlap place" was excepted in the deed to Lloyd.   The description was sufficient and complete in itself.  (Devlin on Deeds, secs. 1012, 1013.)   A description is sufficient if it suffice to identify the land so that the parcel intended to be conveyed can be ascertained either from the calls or by aid of the descriptive portions. (*Banks* v. *Moreno,* 39 Cal. 239, 240; *Preble* v. *Abrahams,* 88 Cal. 245.)   If the latter part of the description is held to be specific, then it is clearly irreconcilable with the first part, and under the statute the first must prevail (Civ. Code, sec. 1070); and if there be a doubt as to the interpretation, then, in this exception in Lloyd's deed, it must be interpreted in favor of the grantors, and against the grantee Lloyd.   (Civ. Code, sec. 1069.) Where there are certain definite and ascertained particulars in the description, the addition of others, which are indefinite, unknown, or false, does not frustrate the conveyance, but it must be construed by the first-mentioned particulars.  (Code Civ. Proc., sec. 2077.)   The terms "northerly," "northeasterly," etc., are only used as

"due north" and "due northeast," when, if this con-
structed were not adopted, the deed would be void for
want of certainty. (Devlin on Deeds, sec. 1035; *Fratt*
v. *Woodward*, 32 Cal. 220; 91 Am. Dec. 573; *Faris* v.
*Phelan*, 39 Cal. 612; *Irwin* v. *Towne*, 42 Cal. 326.) The
excepted tract is well described by name, and the par-
ticular description evidently being in reiteration or
affirmation, and not intended to be used in the sense of
restriction, in so far as it is erroneous or defective, it
must be regarded as false. (*Haley* v. *Amestoy*, 44 Cal.
132.) The intent of the parties is clear, and the deed
must be construed thereby. (Civ. Code, secs. 1066,
1636, 1640, 1650.) In the exception the reference to the
agreement of sale made by L. Snodgrass to Mrs. Dunlap
and Mrs. Watkins has the same legal effect as if the de-
scription contained in the agreement of sale had been
inserted in the deed itself. It is wholly immaterial
whether the deed or agreement of sale referred to has
been acknowledged or recorded, or not. (3 Washburn on
Real Property, 5th ed., 458; Devlin on Deeds, sec. 1020,
and cases cited; *Vance* v. *Fore*, 24 Cal. 436.) Lloyd and
his grantees had notice of the agreement of sale, for it
is named and referred to in the deed under which they
claim, and therefore they had actual notice thereof.
(Civ. Code, sec. 1217.) The fact of open and notorious
possession by Mrs. Dunlap of the lands as described in
her agreement of sale would, of itself, be sufficient to put
a purchaser upon inquiry as to the existence of a pre-
vious sale. The recording of the deed has nothing to
do with the actual passing of title; it is simply notice of
an act having been already done, and any other suffi-
cient notice is equally good. (3 Washburn on Real
Property, 5th ed., 337, 338; *Lawton* v. *Gordon*, 37 Cal.
202; *Moss* v. *Atkinson*, 44 Cal. 3; *Bank of Mendocino* v.
*Baker*, 82 Cal. 114.) While the practice of reserving
the ruling of the court upon questions of admissibility
of evidence may be properly condemned as faulty, and
a serious embarrassment to attorneys in the trial of
cases, yet it is a matter that must of necessity be left to

the discretion of the court.  (*Mayo* v. *Mazeaux,* 38 Cal. 445; *Roper* v. *McFadden,* 48 Cal. 346.)

McFARLAND, J. — This is an action to quiet title. Judgment went for plaintiffs, and defendants appeal from the judgment, and from an order denying a new trial.

The land in dispute is a narrow wedge-shaped piece, with the point to the south, and widening as it runs northerly. The northerly end of the piece is a certain ravine, called the San Juan or Graveyard barranca.

On the east side of the strip in dispute there is a piece of land called the "Price tract," which commences at the lower or southerly end of the land in dispute, and runs along it northerly about one third of the distance up to the barranca. Along the west side of the Price tract there is a road sixteen feet wide which stops at the northerly line of said Price tract.

Now, the contention of plaintiffs is, that the easterly line of the land in contest is the westerly line of said road as far as it extends, and a prolongation of said line northerly to the barranca. The direction of such line would be several degrees east of north. The defendants contend that the true easterly line of the land in contest commences at the southwest corner of the Price tract on the easterly side of the road, and runs diagonally across the said road due north to the said barranca.

It is true, as appellants contend, that this is not an action to reform a deed; and being an action to quiet title, plaintiffs were called upon to show title in themselves. And the question to be determined was, whether or not the exception in a certain deed to defendant Lewis M. Lloyd included the land in contest.

On November 28, 1884, one Larkin Snodgrass owned a large tract of land — 4,280 acres — including the land in contest in this case, and on that day he entered into a written contract to sell a certain part of said large tract to Alice L. Dunlap and Susan A. Watkins. The part of the description of the land mentioned in said contract which it is necessary to here state is as follows:

" Bounded on the east by the road sixteen feet wide between the lands of Price and the party of the first part, and a continuation of the west line of said road northerly to the barranca known as the Graveyard barranca, thence southerly along the center of said barranca, or corporate limits to the town of San Buenaventura, to the northerly line of the public road, and thence easterly alone said road to the westerly line of said road between the lands of the party of the first part and lands of Price." Thereupon Mrs. Dunlap entered upon the full possession of the land described in said contract, resided upon and cultivated it, and it became and was commonly known as the " Dunlap place." Some time afterwards there was litigation over this contract, which finally terminated in favor of Snodgrass; and on June 5, 1886, Snodgrass and Cooper and Brooks, who then each owned one third of the large tract, entered into a contract with Mary E. Redrup to sell her the said Dunlap place. The description in the contract with Redrup was substantially the same as that in the contract with Dunlap, the part in the description in the contract with Redrup material here being as follows: " To the west line of the road running between lands of the parties of the first part and Price, and thence northerly along the west line of said road and the prolongation of said line to the said San Juan barranca." The land thus agreed to be sold to Redrup was identical with the land formerly agreed to be sold to Dunlap and Watkins, and known as the "Dunlap place." On May 13, 1889, Snodgrass, Brooks, and Cooper conveyed by deed to Mrs. Redrup the land mentioned in said tract, the description in the deed being the same as that in the contract; and on August 4, 1889, Mrs. Redrup, by deed with the same description, conveyed said land to the plaintiffs in this action. The said contract between Snodgrass and Dunlap and Watkins was recorded June 14, 1887; and the said contract with Mrs. Redrup was recorded November 1, 1887. The deeds above mentioned were recorded immediately after their execution. If, therefore, the

foregoing facts were the only facts to be considered in the case, it is clear that the easterly line of the plaintiffs' land is the westerly line of the sixteen-foot road adjoining the Price tract, extended northerly to the said barranca. But there are other facts upon which appellants base their contention.

On September 8, 1886, Snodgrass, Brooks, and Cooper entered into a written contract with the defendant Lewis M. Lloyd, by which they agreed to sell to him the said large tract of land herein first described, excepting and reserving, however, several pieces of land which had theretofore been conveyed, or which the grantors had contracted to convey; and among such exceptions was the said Dunlap place, described simply as "about sixty acres, known as the Dunlap tract." Three days thereafter, on September 11, 1886, they executed a deed of conveyance of said large tract to said Lloyd in pursuance of said contract, and in the deed the exception of the Dunlap tract was as follows: "Also, excepting a tract of land heretofore agreed to be conveyed by L. Snodgrass to Mrs. Alice Dunlap and Mrs. Watkins, known as the 'Dunlap place,' particularly described as follows: Commencing at the bridge at the Graveyard barranca, on Telegraph road, thence running east along the N. line of said road to S. W. corner of Mrs. Price's land; thence N. to Graveyard barranca, thence down center of same to place of beginning."

If this description had followed the contract, and had stopped with the words "Dunlap place," there would have been no difficulty as to its meaning. But it is contended by appellants that the latter part of the description controls the first part; that the words "to S. W. corner of Mrs. Price's land" carries the line across the road; and that "thence N. to Graveyard barranca" carries the line running northward diagonally back across the road in a course due north to the barranca. In the absence of proof whether or not the sixteen-foot road was upon, and therefore a part of, the Price tract," it might be that the grantor, by the phrase

"S. W. corner," meant a point on the west side of the
road; in which case the descriptions in the Lloyd deed
and the Dunlap contract would be substantially the same.
But passing that uncertainty, and admitting that by the
southwest corner was meant a point on the east side of
the road, still it is by no means clear that "thence N."
means *due north.* Assuming that "N.," as here used,
stands for "north," and not for some other word ex-
pressing generally a northern direction, still, such a word
means "due north" only when that construction is ne-
cessary for certainty, or when there is nothing else to
show that it was not used in that strict sense. (*Irwin* v.
*Towne,* 42 Cal. 334; Delvin on Deeds, sec. 1035.)  The
main thing to be got at is the intention of the parties to
the instrument; and when the language used is not ab-
solute, we must construe it with reference to the situa-
tion of the parties and the character and condition of
the subject-matter of the contract.  This sixteen-foot
road runs nearly north and south, and if, as appellants
contend, the grantors, in describing the land, arrived at
a point on the east line of said road, it is almost impos-
sible to believe that by the words "thence N. to Grave-
yard barranca" they meant a line due north which
would run diagonally through and across the road.  It
would be a much more reasonable construction to say
that they meant northerly along the side of the road on
which the line commenced.  And under such a con-
struction the plaintiffs would get what they claim, and a
strip the width of the road in addition.  We say this
much to show that the latter part of the description is
uncertain; and the rule is clear, that when a general de-
scription is certain, and a particular description uncer-
tain, the former prevails.

There is no question that the general description is
entirely certain.  In the original Dunlap contract, the
land is accurately bounded on the east by the sixteen-
foot road and a continuation of the west line thereof,—
a most probable and natural boundary.  Afterwards,
and down to the time of the deed to Lloyd, it was always

known as the Dunlap place, having its eastern boundary
on the road. The court so finds, and the evidence shows
it. It was shown by the testimony of some of the gran-
tors and others, that Dunlap was cultivating the Dunlap
place "right up to that road" at the time of the sale to
Lloyd, and that Lloyd then had actual knowledge where
the said boundary was. And if he had not had such
actual knowledge, as his contract and deed reserved the
Dunlap place, he was put upon inquiry as to what that
"place" was. We think, therefore, that the language
used shows the intent of the parties to except the *real*
Dunlap place, and that the latter part of the description
was not intended to and does not limit the boundaries
of that place. A reservation in a grant is to be inter-
preted in favor of the grantor, and the general rule is,
that if two parts of a grant are irreconcilable, the first
prevails. (Civ. Code, secs. 1069, 1070.)

The case at bar resembles very much the case of
*Haley* v. *Amestoy*, 44 Cal. 132. The description involved
in that case was: " All the undivided two thirds (⅔) of all
the lands known by the name of rancho de San Vicente,
lying and being situated in the county of Los Angeles,
and state of California; the lands of said rancho being
known and described as follows "; then follows a particu-
lar description of courses and distances, etc. This par-
ticular description, if adopted, would have left out a large
portion of the rancho. The rancho, however, was well
known by its name. The court, in its opinion, after
some discussion of the question whether the particular
description was uncertain, proceeds as follows: "But
however this may be, we are of the opinion that the
rancho is well described by name, and that the particu-
lar description was not intended to be used in the sense
of restriction. The language is [giving the general de-
scription as above stated]. This language indicates that
the dominant idea in the mind of the grantor, when the
deed was made, was of the rancho of San Vicente as a
whole, and not of the particular lines or marks by
which it might be described. This being so, the deed

must be held to convey two thirds of the whole rancho; however erroneous may be the particular description." And in accordance with the views expressed in that case, we think the language involved in the case at bar must be held as embracing the whole Dunlap place, notwithstanding anything contained in the attempted particular description. The conclusion of the court below in favor of respondents was, in our opinion, right.

The minor points in the case are not of sufficient importance to affect the correctness of the judgment. It was of no consequence that the contract to convey to Dunlap and Watkins was not recorded until after Lloyd's purchase; his contract and deed put him on inquiry, and were the equivalent of actual notice. The co-defendants of Lewis M. Lloyd, to whom he conveyed certain interests in the land, occupy a position no different from that of Lloyd himself. The court did not err in denying defendants' offer to introduce the judgment roll in a certain action of *Snodgrass et al.* v. *Parks et al.*, which was an action to foreclose a mortgage upon certain described premises. In the first place, plaintiff was not in privity with the parties to that action; and in the second place, the complaint therein does not purport to describe the "Dunlap place." And for the same reasons there was no error in sustaining plaintiffs' objection to a certain homestead declaration made at one time by Mrs. Dunlap. Other rulings on admission of evidence are not necessary to be specially noticed.

The court reserved some objections to offered evidence, and ruled upon them at the final decision of the case; and appellants contend that such practice was erroneous, and a ground for reversal of the judgment. In *Mayo* v. *Mazeaux*, 38 Cal. 448, such practice was severally criticised, but was not held to be *ipso facto* a cause for reversal. The better practice, is, no doubt, to rule upon questions involving the admissibility of evidence as they arise; but it happens sometimes that the determination of the merits of the case turns upon a question touch- the relevancy or incompetency of certain offered evi-

dence, and in such event it would be entirely proper for the court to take the question under advisement, where neither party could be prejudiced by such a course.   On the other hand, the practice, which seems nowadays to be too freely indulged in, might in some cases seriously embarrass a party who, not knowing what the final ruling would be, could not determine what further evidence he should introduce.   Therefore, whether such practice would be ground for reversal in any given case would depend upon the particular circumstances of that case. In the case at bar we cannot see that appellants were at all prejudiced by the practice complained of.

Judgment and order denying a new trial affirmed.

PATERSON, J., SHARPSTEIN, J., HARRISON, J., GAROUTTE, J., and DE HAVEN, J., concurred.