[S. F. No. 2942.   Department Two.—November 11, 1904.]

## JAMES WALSH et al., Appellants, v. J. P. ABBOTT et al., Respondents.

DEED—DESCRIPTION—CONSTRUCTION—THIRD PART OF HALF OF RANCHO —QUITCLAIM — EFFECT OF PATENT.—Where a grantor owned an uncertain third part of an undivided half of a rancho, and on the same day when he deeded an undivided third part of the northern half of the rancho, according to a paper title, brought suit to determine what part of the rancho he in fact owned, and subsequently obtained a patent to the undivided third part of the eastern half of the rancho, and in his deed to the grantee, after a description of the whole rancho by boundaries, added "together with all the estate, right, title, interest, and demand whatsoever which I had or may have, of, in, or to the same, or any part or parcel thereof, to have and to hold the aforesaid premises with all rights, privileges, and appurtenances thereunto belonging," unto the grantee, etc.,—the deed is to be construed most strongly in favor of the grantee, and so as to give effect to all of its operative words, and in view of the parties, the subject-matter at the time of contracting, and the attendant and surrounding circumstances leading to its execution,—and, so construed, *held*, that the deed operates as a quitclaim to the whole of the grantor's interest in the

rancho, and the effect of the patent was not to create a new title in the patentee, but to confirm in his grantee, through him, the title which had formerly been his.

APPEAL from a judgment of the Superior Court of Contra Costa County. William S. Wells, Judge.

The facts are stated in the opinion of the court.

John O'B. Wyatt, E. W. McGraw, and Rodgers, Paterson & Slack, for Appellants.

H. O. Beatty, M. R. Jones, Hartley & Abbott, A. A. Moore, George A. Lamont, W. S. Goodfellow, Garret W. McEnerney, Sanborn & Beatty, and Chickering & Gregory, for Respondents.

HENSHAW, J.—By this action plaintiffs sought to have partition of the southeast quarter of the Rancho Medanos, in Contra Costa County. The rancho lies on the southern bank of the San Joaquin River and Suisun Bay. The plaintiffs claim as heirs at law of James Walsh, deceased, and seek to establish his ownership in an undivided one-third interest in the southeast quarter of the rancho, claiming that by succession it has devolved upon them.

In 1839 the Mexican government granted the Rancho Medanos to José Antonio Mesa and José Miguel Garcea. Mesa and Garcea in 1849 granted to J. D. Stevenson the southern half of the tract of land known as Medanos. Their deeds were recorded in 1851. In 1850 Mesa and Garcea in like manner granted to Michael Murray, James Walsh, and Ellen Fallon the north half of the same tract. These deeds were recorded in June, 1850. Upon August 2, 1850, James Walsh, by deed of that date, granted to Martin Murphy the undivided one third of the northern half of the Rancho Medanos. This deed was recorded in 1851. On the day of the execution of the deed by Walsh to Murphy, Stevenson brought suit in the third district court of the state against the Garceas, the Mesas, and their grantees, Murray, Walsh, and Fallon, to reform and correct the deed to him and to the other grantees, and to partition the rancho. The suit was based upon an alleged error of description running through

all the deeds. It consisted in describing the San Joaquin River as bounding the rancho on the east, when in fact it formed the northern boundary. The action resulted in a judgment favorable to Stevenson's contention, and deeds were exchanged between Stevenson upon the one hand, and Murray, Walsh, and Fallon upon the other, whereby there was conveyed to Stevenson the west half of the rancho, and to Murray, Walsh, and Fallon the east half thereof. Subsequently, in 1853, Stevenson, Murray, Walsh, and Fallon filed with the board of land commissioners their petition for the confirmation of the grant. In that year, or in the year after, James Walsh died. After proceedings had before the board of land commissioners, and before the United States district court for the northern district of California, the grant was confirmed, the west half to Stevenson, the east half to Murray, Walsh, and Fallon, and upon October 8, 1872, the United States issued its patent to them.

Plaintiffs for title introduced the deeds and records to which reference has been made, and supplemented these with evidence that James Walsh, the patentee, was never married; that of his immediate kin, brothers and sisters, all had died unmarried without issue, saving one brother, who was the father of plaintiffs, who died in 1887, and whose death was followed by that of his wife, leaving no other issue than the plaintiffs herein.

The court, upon motion of defendants, nonsuited the plaintiffs upon this showing, and the soundness of its ruling in this regard is here attacked.

Sundry propositions are urged by respondents in support of the court's order. We pass them by, not as being without merit, but because they go merely to the question of the failure of the proof to establish title by succession in the plaintiffs. As, for example, it is urged that the proofs failed utterly to show that both the original James Walsh and the father of these plaintiffs had not, by will, devised all of their title to the lands in question; that there is no presumption of intestacy, and that the ruling of the court was proper for this reason. These points, though only for the argument which is based upon them, concede that some title to the rancho remained in James Walsh, subject to his legal disposition by grant or devise. They are passed by because their

consideration is rendered unnecessary in view of the conclu-
sion we have reached that Walsh, by his deed to Martin
Murphy, divested himself of all title. That deed is as fol-
lows:—

"Know all men by these presents, that I, James Walsh, for
and in consideration of the sum of ten thousand dollars to
me in hand paid by Martin Murphy, of Santa Clara County,
California, at or before the ensealing and delivery of these
presents, the receipt whereof I do hereby fully confess and
acknowledge, I have given, granted, sold and conveyed, and
by these presents, do give, grant, sell and convey unto the
said Martin Murphy, his heirs and assigns forever, the undi-
vided one-third of all that northern half part of all that cer-
tain tract of land situate in upper California, known by the
name of 'Medanos' or 'Meganos' and bounded as follows: On
the north by River San Joaquin, on the south by Jonathan
D. Stevenson, on the east by Doctor Marsh, and on the west
by Salvio Pacheco.

"Together with all the estate, right, title, interest and
demand whatsover which I had or may have of, in or to the
same, or any part or parcel thereof, to have and to hold the
aforesaid premises with all right, privileges and appurte-
nances thereunto belonging unto the said Martin Murphy, his
heirs, assigns, executors and administrators to his and their
use and behoof forever.

"In testimony whereof, I have hereunto affixed my hand
and seal this 2nd day of August, Anno Domini, one thou-
sand eight hundred and fifty.

"JAMES WALSH.    (Seal.)"

The contention of appellants is, that Walsh by this deed
divested himself only of such title as he had to the northern
half of the rancho, and that, as by the patent from the United
States he and his cotenants, Murray and Fallon, were granted
the eastern half of the rancho, he still retained his undi-
vided interest in the south half of that east half.

The particular part of the deed calling for construction is
the quitclaim clause beginning with "together with all the
estate, right, title," etc. If it shall be found that the true
meaning and intent of Walsh was to grant his undivided one-
third interest in the northern half of the rancho, which was
all of the interest in the rancho to which he then had paper

title, and that the quitclaim clause had reference only to this northern half, the construction for which appellants contend will be established. If, upon the other hand, the view of the respondents, which view was adopted by the trial court, is the true one, then, by this clause, Walsh divested himself of all of his interest in and to all of the rancho, and the effect of the patent from the United States to Walsh was not to create a new title in him, but to confirm in his grantees, through him, the title which had formerly been his. (*Stark* v. *Barrett*, 15 Cal. 362; *Moore* v. *Steinbach*, 127 U. S. 70.)

Certain familiar principles of construction are to be invoked: first, as between the parties to the deed, it is to be construed more strongly in favor of the grantee; second, it is to be construed, if possible, so as to give all of its operative words effect; and third, if any doubt still exists as to the intention of the grantor, in arriving at that intention there shall be considered the situation of the parties, the subject-matter at the time of contracting, and the attendant and surrounding circumstances leading to the execution of the instrument. (*Brannan* v. *Mesick*, 10 Cal. 95.)

The first of these principles requires no special elucidation. As to the second, it is to be noted that the construction contended for by appellant gives no meaning nor effect whatsoever to the quitclaim clause. According to this construction, Walsh, having made his deed of grant to all of his interest in the northern half, in the next breath quitclaims to his grantee the same property. Such a construction makes of the clause in question nothing but empty and useless verbiage, while, upon the other hand, to construe it as respondents contend it should be construed would give reasonable and effective force to the language designedly employed. The deed would then be understood to mean that Walsh, having conveyed by grant all of the land to which he had paper title, as further assurance and confirmation of title to his grantee, and, to save the possibility of conflict over boundaries, quitclaimed to him whatever interest he might have in all of the rancho. Under this construction the "same" has reference to the Rancho "Medanos" or "Meganos," as previously employed in the deed, and in the subsequent phrase found in the *habendum* clause, "to hold the aforesaid premises," "aforesaid premises" is referable to the word "same."

The belief that such was the true intention of the grantor fairly expressed in his deed becomes fixed when consideration is paid to the surrounding circumstances. Walsh was the owner of one third of an uncertain half of the rancho. By his paper title it was the northern one half. It is fairly inferable that Walsh knew that it was in question and in dispute as to which one half it was within which his land lay. It is fairly inferable, also, that he knew this at the time he made his deed to Murphy, because the suit to determine this question was brought upon the very day he made his deed, and it is not to be supposed that such a suit would have been commenced without an effort first made by Stevenson to reconcile these differences with Walsh, Murray, and Fallon by an exchange of deeds without the necessity of the intervention of a court. It seems in every way reasonable to conclude, therefore, that Walsh knew that his ownership to one third of the north half was disputed; that the result of the dispute could only be one of two things, to confirm him in the ownership of that particular piece, or to assign to him the ownership of one third of some other one half, as was actually done. Was it, then, the intention of Walsh in conveying to Murphy for a valuable consideration to give him a title to a limited piece, which title might prove valueless, or was it his intention to convey to him the title which he apparently had to one third of the north half, and for his grantee's further protection to assure him in this title, should it prove defective, by a quitclaim of whatever interest it might be found in truth that he did have? There can be no hesitation in saying under all of these circumstances that the latter was the true intention of the grantor.

For the foregoing reasons the judgment appealed from is affirmed.

McFarland, J., and Lorigan, J., concurred.