[Civ. No. 381. Third Appellate District.—November 22, 1907.]

W. R. KING, Respondent, v. MOSES SAMUEL, Appellant, et al., Codefendants.

ACTION TO QUIET TITLE—PATENTED STATE LANDS—RIVER DIVISION— SUPPORT OF FINDINGS AND JUDGMENT.—In an action to quiet title to patented state lands lying on the east side of Kings river, under a patent covering lands on both sides of that river, where plaintiff deraigned title to the lands claimed, and the evidence showed that the claim of the defendant Samuel thereto was without right, and that his title was limited to lands on the west side

of the river, findings and judgment for the plaintiff are properly supported.

ID.—Construction and Effect of Deed to Defendants' Predecessor—Deed Prepared for Grantee—Ambiguous Description.—Where the whole patented land comprised 189.20 acres of swamp land in sections 27 and 28 of a certain township and range on both sides of Kings river, a deed from the patentee to defendant Samuel's predecessor, which was prepared by counsel for the grantee, and which described the whole land by metes and bounds, but limited the acreage granted to 69.53 acres, and following the general description was the clause: ''This conveyance intends to convey all the swamp and overflowed land in sections 27 and 28 lying west of the river,'' such clause cannot be rejected as inconsistent with the prior description; nor does the rule of construction in favor of the grantee apply, but any ambiguity must be resolved against the grantee who caused it to exist.

ID.—Extrinsic Evidence—Conflict to be Determined by Trial Court.—Extrinsic evidence was admissible to show that the original sale to the grantee was of 69.53 acres lying on the west side of the river at the price of $25 per acre; that the grantee took possession only of such land, and any conflicting evidence as to whether the grantee claimed any land on the east side of the river was to be determined by the trial court, which was warranted from the evidence in concluding that the grantee took no lands east of the river, and could convey none.

ID.—Tax Title of East Lands—Void Deed—Want of Notice Required by Law.—Where the defendant relied upon a tax title to the land on the east side of the river, the validity of such title must be governed by the law in force at the time of the sale; and where the sale was made under the act of March 19, 1891, requiring the purchaser thirty days prior to the expiration of the time for redemption, or prior to application for a deed to serve the owner with a written notice, to be recorded and proved by affidavit, in case of the want of such notice and proof, the deed was void and passed no title.

ID.—Requirement of Notice Applies to State.—The requirement of notice under the act of 1891 applies to the state as well as to a private purchaser, and the state can acquire no title or pass one, unless such notice is given.

ID.—Burden of Proof.—One relying upon a tax deed is bound to establish the giving of the statutory notice as part of the proof of title.

ID.—Lost Deed—Secondary Evidence.—Where plaintiff showed that diligent search had been made for a lost or misplaced deed, and the same could not be found, secondary evidence of its contents is admissible, though the lost instrument may still exist.

Id.—Reasonable Diligence in Search.—Reasonable diligence in mak-
ing the search for a lost or misplaced deed does not require the
exploration of all possible places where the instrument might be.

Id.—Circumstances to be Considered—Discretion of Judge.—The
surrounding circumstances and facts are to be considered, and the
weight to be given to them is largely within the discretion of the
trial judge. In this case, it is held that there was a sufficient
foundation laid to admit the secondary evidence of the lost deed.

APPEAL from a judgment of the Superior Court of
Fresno County, and from an order denying a new trial. H.
Z. Austin, Judge.

The facts are stated in the opinion of the court.

Stanton L. Carter, and J. H. McKnight, for Appellant.

Any conflict in .the description must be resolved against
the grantor and in favor of the grantee. (*Hager* v. *Spect,*
52 Cal. 579, 582.) A clause repugnant to the general in-
tention of the deed is to be rejected as void. (*Wilcoxson*
v. *Sprague,* 51 Cal. 640, 642; *Haley* v. *Amestoy,* 44 Cal. 132,
138.) The clause cannot be construed as if it read, ''This
conveyance intends to convey (*only*) the swamp and over-
flowed lands in sections 27 and 28, lying west of the river.''
The meaning of the words cannot be changed, and the earlier
clause must prevail. (24 Am. & Eng. Ency. of Law, p. 598;
4 Am. & Eng. Ency. of Law, p. 80; *Eldridge* v. *See Yup
Co.,* 17 Cal. 44; *Haley* v. *Amestoy,* 44 Cal. 138; *Vance* v.
*Fore,* 24 Cal. 436; *Martin* v. *Lloyd,* 94 Cal. 195, 29 Pac.
491; *Barney* v. *Miller,* 18 Iowa, 460.)

Geo. Cosgrove, and W. D. Foote, for Respondent.

The deed must be construed against the grantee who caused
the deed to be written and caused an uncertainty to exist.
(Civ. Code, sec. 1654.) The case was one for extrinsic
evidence to explain the circumstances under which the deed
was made and the matter to which it relates, as bearing
upon the acts and intents of the parties. (Civ. Code, sec.
1647; *Hill* v. *McKay,* 94 Cal. 5, 20, 29 Pac. 406; *Mulford* v.
*Le France,* 26 Cal. 88; *Yocco* v. *Conroy,* 104 Cal. 468, 38 Pac.
107; *Pico* v. *Coleman,* 47 Cal. 65; *Truett* v. *Adams,* 66 Cal.

218, 5 Pac. 96; *Martin* v. *Lloyd,* 94 Cal. 195, 202, 29 Pac. 491; *Reamer* v. *Nesmith,* 34 Cal. 624; *Stanley* v. *Green,* 12 Cal. 148, 162.)

CHIPMAN, P. J.—Action to quiet title. · The controversy concerns the title to certain swamp and overflowed land in sections 27 and 28, township 15 south, range 23 east, Mount Diablo base and meridian, situated in Fresno county. The land in question is that portion of said sections, embraced in survey number 593, lying on the east side of Kings river. The survey is particularly described in the complaint by metes and bounds, "as described in patent of the State of California to W. T. Cole, recorded May 1, 1888, in Book of Patents, at page 41, Records of Fresno County." Plaintiff alleged ownership in fee on and ever since April 13, 1901. A general demurrer to the complaint was overruled and defendant Samuel alone answered. He denied plaintiff's alleged ownership, and alleged on his own behalf upon information and belief "that he is and long prior to the commencement of this action (complaint filed May 25, 1904), was, and ever since has been the owner in fee of all that portion of swamp and overflowed land survey numbered 593, lying east of the center of the channel of Kings River . . . and within sections 27 and 28 . . . which said land, as defendant is informed and believes, is the land attempted to be described in plaintiff's complaint." The court made the general findings: "1. That all the allegations of plaintiff's complaint are true and that the denials contained in the answer of defendant, Moses Samuel, are, and each of them is untrue"; and 2. That on April 13, 1901, plaintiff was and ever since has been and now is the owner in fee of all the land in said sections situated on the east side of Kings river, being a portion of the survey 593 as particularly described in the complaint and set out in the finding, and that defendant Samuel's claim is without right. Judgment went accordingly, from which and from the order denying his motion for a new trial defendant Samuel appeals. ·

The evidence shows that survey 593 embraced parts of sections 21, 22, 27 and 28 of said township on both sides of Kings river and was approved June 24, 1871, and recorded June 29, 1871. Patent issued to W. T. Cole April 18, 1888,

and describes the land as in the survey, "containing 189.20 acres, more or less." There was admitted in evidence a deed from Cole to S. M. King, C. W. King and W. R. King (plaintiff) dated April 5, 1901, duly recorded, to that portion of sections 27 and 28, in survey 593, "which lies and is situated on the east side of Kings River"; refers to the patent and concludes: "This conveyance intends to convey, and does convey, to the grantees herein mentioned all of the swamp and overflowed land in sections 27 and 28, T. 15 S., R. 23 E., M. D. B. & M., which now lies, and is situated, on the east side of Kings River, in said section." A quitclaim deed from Bank of Selma to S. M., C. W. and W. R. King, dated March 20, 1901, duly recorded, was introduced in evidence, and it appeared from the judgment-roll in an action by said bank against said Cole that a judgment of foreclosure was entered against him authorizing the sale of "All the right, title and interest of said mortgagor (W. T. Cole) in and to overflowed land in said sections 27 and 28, in said Township fifteen (15) (omitting north or south) of said Range twenty-three (23) East, of Mount Diablo Base and Meridian." The judgment-roll shows the decree of foreclosure and order of sale dated the twenty-second day of January, 1896, directing the sale of the mortgaged premises. Also, that a sale of said premises was made under said order to the plaintiff in the action, the said bank, and the commissioner's deed dated February 29, 1896. There was evidence also that S. M. and C. W. King, in May or June, 1894, conveyed their interest to plaintiff. At this point plaintiff rested his case, and there was a motion for a nonsuit on the ground that the evidence does not show a conveyance of the property by Cole to the Kings, nor by S. M. and C. W. King to W. R. King, and that the conveyance from the bank under foreclosure proceedings is not sufficient to convey any title that Cole may have had; and that it does not appear that at the time he executed the mortgage to the bank, or at the time of the conveyance by Cole, he had any title to the property. This motion was overruled and defendant Samuel excepted. The foregoing presents plaintiff's chain of title.

Defendant Samuel introduced in evidence a deed from Cole to Margaret R. Ross, executrix of the estate of Henry Ross, deceased, dated October 1, 1891, and duly recorded, by

which Cole granted to said Margaret R. Ross the following land, to wit: "All the swamp and overflowed land in Survey No. 593, embraced in Sections 27 and 28, Township 15 South, Range 23 East, M. D. B. & M., and more particularly described as follows, to wit." (Then follows the description of the land by metes and bounds.) At the close of this description is the following clause: "This conveyance intends to convey all the S. and O. land in Sections 27 and 28, lying west of the river." By mesne conveyance defendant deraigns title through the above grantee.

On June 30, 1893, the property in controversy was sold to the state by the tax collector of Fresno county for delinquent state and county taxes for the year 1892. A deed was made to the state November 1, 1898, under said sale. On July 5, 1901, the state by the tax collector sold and conveyed the land to one Meyer and defendant deraigns title through him. It was admitted that Margaret R. Ross intermarried with one Baird and is the same person as Margaret R. Baird mentioned in the transcript.

Two questions arise under the deed from Cole to Mrs. Ross as executrix of the will of Henry Ross, deceased: First, did it in absolute and uncertain terms convey the land in controversy; second, if not, was extrinsic evidence admissible to explain the intention of the parties? The deed first described all the land in sections 27 and 28 by metes and bounds, including by the description the land in question. The acreage is set down as 69.53, which is considerably less than the acreage, in said sections, embraced on both sides of the river. Following the description is this clause: "This conveyance intends to convey all the S. and O. lands in sections 27 and 28, lying west of the river."

Appellant contends that if there is any conflict between the two parts of the description, the former must prevail and the clause quoted must be ignored; citing section 1070 of the Civil Code; and that a general description in a deed of conveyance, which is certain, must prevail, if the particular description is uncertain; citing *Martin* v. *Lloyd*, 94 Cal. 195, 203, [29 Pac. 491]. The code section cited reads as follows: "If several parts of a grant are absolutely irreconcilable, the former part prevails." There is no such repugnancy between the description given in the deed and

the subsequent clause as would justify the rejection entirely of this clause. In speaking of a conflict between the granting clause of a deed and its *habendum,* the court said in *Barnett* v. *Barnett,* 104 Cal. 298, 300, [37 Pac. 1049] : "The intention of the parties to the grant is to be gathered from the instrument itself, and determined by a proper construction of the language used therein, but for the purpose of ascertaining this intention the entire instrument, the *habendum* as well as the premises, is to be considered, and, if it appear from such consideration that the grantor intended by the *habendum* clause to restrict or limit or enlarge the estate named in the granting clause the *habendum* will prevail over the granting clause."

Appellant says the intention was to make more certain that the description included the land on the west side of the river. But why introduce it at all when a complete description preceded it, including that land? It is quite as reasonable to suppose that it was introduced to make clear the intention not to embrace the land on the east side of the river. The case cited in the 94th California is not in point because we cannot say that the clause in dispute is uncertain; it is as certain and definite in its meaning as any part of the deed, for it has the river as a controlling monument. It seems to us that we must either give effect to this clause and limit the grant accordingly, or we must sustain the lower court in its ruling that there was sufficient doubt and uncertainty as to the intention of the grantor to warrant the introduction of extrinsic evidence to ascertain that intention, by considering the situation of the parties, the subject matter at the time of contracting, and the attendant and surrounding circumstances leading to the execution of the instrument. That such inquiry may be made where such doubt exists is well settled. (*Martin* v. *Lloyd,* 94 Cal. 195, [29 Pac. 491] ; *Walsh* v. *Abbott,* 145 Cal. 285, 289, [104 Am. St. Rep. 38, 78 Pac. 715], where the rule is spoken of as a familiar principle of construction.)

It appeared from the evidence that on September 19, 1887, Cole sold to Henry Ross (Mrs. Ross' testator) "69.25 acres embraced by the land on the west side of Kings River in sections 27 and 28," for $1,731.25, or $25 per acre. Having lost his certificate of purchase and having applied for a dupli-

cate, he entered into a bond with Ross to convey the land upon obtaining a patent, agreeing to repay the money upon failure to obtain the patent. Ross was given "immediate possession of said land, and to use the same in such manner as he may see proper, and to cut and remove wood therefrom in such quantities as he may see fit." Before Ross died Cole made a deed to him and received back his notes and bond given as security, but the deed was not satisfactory to Ross and was not recorded and after his death Mrs. Ross was unwilling to accept it. On October 1, 1891, after the death of Ross, Cole made the deed in question to her as executrix of her husband's will. This was at her request and the deed was prepared by one McKenzie acting for her. In doing so McKenzie described the land on both sides of the river, but he gave the acreage as originally sold to Ross and then inserted the clause which has given rise to this controversy. No new consideration passed and the purpose was to complete the sale of Cole to Ross in the latter's lifetime. Cole testified: "After I made the deed to Mrs. Ross, I told her, 'Why don't you buy the balance of this land, and have it all?' and she says, 'If William Shafer will advise me to buy this land, I will pay you your price for it and take it.' 'All right,' says I, 'You see him.' Mr. Shafer being a son-in-law of mine, I wouldn't approach him. By the balance of this land I meant the swamp land in 27 and 28, on the east side of the river. I can't remember how many acres there were. This old deed that was returned to me had been tampered with, and there was 80 acres down on that in a different handwrite altogether." He also testified: "Mrs. Baird (formerly Mrs. Ross) never did anything with the land on the east side of the river. She didn't claim it." Another witness, familiar with the land since 1884, testified: "I never knew her to do anything with the land on the east side the river. Q. She did have possession of the land on the west side? A. O, yes; we all understand that she owned the land on the west side; used to go there often for picnics and the like—never knew her to have anything to do with the land there." Similar testimony was given by other witnesses. There is evidence in some degree conflicting with some of the above testimony, but the trial court alone is charged with the responsibility of reconciling the evidence

adduced before it. There is evidence warranting the trial
court in holding that the land originally sold by Cole to Ross
did not include the land on the east side of the river; that in
the subsequent transactions with Mrs. Ross she so understood
it and acted upon that construction of her deed. In the light
thrown upon the instrument by these extrinsic facts, which
were admissible and relevant, we are clearly of the opinion
that Mrs. Ross did not take, by the deed in question, the
land on the east side of the river, and hence conveyed no title
to her grantee through whom defendant claims. These ex-
trinsic facts all relate to a time when Mrs. Ross held the
title ·from Cole. (Code Civ. Proc., sec. 1849; *Williams* v.
*Harter*, 121 Cal. 47, [53 Pac. 405].)

Respondent contends that the tax collector had no power
to make the tax deed to Meyer for the reason that there was
no notice given by the purchaser and also for the further
reason that the deed contains no description of the land at-
tempted to be conveyed. The law in force at the time was
the act of March 19, 1891 (Stats. 1891, p. 133). Section 2,
which amended section 3785 of the Political Code, reads in
part: "*provided, however*, that the purchaser of property
sold for delinquent taxes, or his assigns, must, thirty (30)
days previous to the expiration of the time for the redemp-
tion, or thirty days before he applies for a deed, serve the
owner of the property purchased, or upon the person oc-
cupying the property, if said property is occupied, a writ-
ten notice" (then follow certain things which must be em-
braced in the notice). The act requires a duplicate of this
notice to be filed with the county recorder. It also provides
for posting the notice upon the property if unoccupied and
the owner cannot be found; "and no deed of property sold
at a delinquent tax sale shall be issued by the tax collector,
or any officer, to the purchaser of said property, until the
notice herein provided for shall have been given, and each
purchaser shall have filed with such tax collector, or other
officer, an affidavit showing that the notice hereinbefore re-
quired to be given has been given as required," etc. This
was the law in force when the deed was made and must
govern the sale. (*Reed* v. *Lyon*, 96 Cal. 501, [31 Pac. 619];
*Teralta* v. *Shaffer*, 116 Cal. 518, [58 Am. St. Rep. 194, 48 Pac.
613]; *Walsh* v. *Burke*, 134 Cal. 594, [66 Pac. 866]; *Collier* v.

*Shaffer,* 137 Cal. 319, [70 Pac. 177].) In the recent case of *Johnson* v. *Taylor,* 150 Cal. 201, [119 Am. St. Rep. 181, 88 Pac. 903], Mr. Justice Sloss deals at some length with a case similar to this and holds that where property was sold for delinquent taxes in 1894, a conveyance to the purchaser, without any notice of the expiration of the period of redemption having been given, is void. Referring to the statute of 1891, *supra,* the learned justice said: "As the law then stood, a deed could not be issued to the purchaser without the giving of the notice required by section 3785 (*Hughes* v. *Cannedy,* 92 Cal. 382, [28 Pac. 575]), and one relying on a tax deed was bound to establish the giving of such notice as a part of his proof of title. (*Miller* v. *Miller,* 96 Cal. 376, [31 Am. St. Rep. 229, 31 Pac. 247]; *Reed* v. *Lyon,* 96 Cal. 501, [31 Pac. 619]; *Walsh* v. *Burke,* 134 Cal. 594, [66 Pac. 866].)'' The opinion then proceeds to discuss the effect of subsequent statutes and concludes: "Under the law as it existed at the time of the sale, the plaintiff's right of redemption was not limited by any fixed time. It lasted at least one year, and would last indefinitely thereafter until thirty days after the purchaser should give the notice required by the statute." It was also held that "the requirement of giving notice applied as well to the state as to a private purchaser." In the case at bar, as in *Johnson* v. *Taylor,* there was no proof of any such notice having been given, and as the law in force when the sale was made must govern, it follows that defendant has failed to establish that any title ever passed from Cole to him. The same view is expressed by this court in *Guptill* v. *Kelsey,* 6 Cal. App. 35, [91 Pac. 409]. These cases were decided since appellant's brief was filed and would seem to answer his contention. Conceding that the evidence offered by plaintiff in rebuttal of recitals in the deed of the state to Meyer was immaterial and irrelevant, it was without prejudice.

It remains to determine whether plaintiff proved title. Plaintiff offered in evidence a deed by Cole to S. M. King, C. W. King and W. R. King of date April 15, 1901 (and, as we have seen, Cole was then the owner), which accurately and definitely described the property in dispute. There was also admitted in evidence over defendant's objection a quitclaim deed of the Bank of Selma to the same persons, dated

March 20, 1901. The bank assumed to convey by virtue of
purchase at foreclosure sale under a mortgage executed to
it by Cole. Plaintiff was permitted also to introduce, against
the defendant's objection, parol testimony to prove that S.
M. and C. W. King conveyed the land to plaintiff by deed
dated March 20, 1901. The objection to the Bank of Selma
deed is that it conveyed nothing, because the mortgage to
the bank failed to state whether the township was north or
south of the Mount Diablo meridian. The title of plaintiff
is established independently of this deed, as we think, and
hence we need not consider the deed from the bank to the
Kings.

S. M. King was plaintiff's father and C. W. King was
plaintiff's brother. Plaintiff testified that he received a con-
veyance of the land in dispute and left it in the care of his
attorney, Mr. Cosgrove, and has not seen it since, but did
not remember the date. Mr. Cosgrove testified that he him-
self prepared a deed from S. M. and C. W. King to plain-
tiff; that it was signed and acknowledged by C. W. King
in his office; that it was sent to Selma to be executed by S. M.
King; that it was returned to his office "signed by S. M.
King and properly acknowledged." He testified: "Now,
that deed has been misplaced in my office with the original
deed from Cole to King. I have evidently wrapped it up in
some papers, and I have not been able to find them, although
I have made diligent search at different times within the last
three months. . . . I know, as a matter of fact, however, that
the conveyance was actually made. It covered the swamp
and overflowed land. I remember the contents of the docu-
ment and the names of the parties contained in it (naming
them). There was a description of the land contained in
the deed; I know what that description was (describing the
land in controversy). The document contained a *habendum*
clause; it contained the usual common clauses of printed forms
of deeds; it was a grant deed" (giving other particulars).
. . . "When it came back from Selma or somewhere, S. M.
King's name was appended together with a certificate of ac-
knowledgment by him. The certificate of acknowledgment
was in due form, taken before a notary or a justice of the
peace; I wouldn't be certain which. It was in due form."
On cross-examination he testified that he could not state

7 Cal. App.—5

whether it came back through the mail, but thought it did; that he discovered he had lost it while he was preparing for the trial within the last three months; that he did not look among all the papers in his office, but did look among all of them that he "thought by any possibility it might become confused with"; that he would not state positively it was not in his office, but that he had not destroyed it or intentionally given it away to anyone; that he knows he has searched among all the papers that he thought by any possibility it could be among; that he did not look in all his books to see if it had not been folded in some one of them, but looked where it ought to be or might be, "but not in every place where it was possible for it to be"; that he had recently made a careful search in every place where he thought it likely was.

It is claimed by appellant that no sufficient foundation was laid for the admission of testimony as to the loss of the deed or its contents; that the testimony of the alleged grantors of the deed should have been taken or the notary's or its absence accounted for; that Mr. Cosgrove did not exhaust the search of all places in his office where by some possibility the deed might have been discovered; that plaintiff did not testify that he had not possession of the deed and did not then know its whereabouts. But plaintiff did testify that he left it in care of Mr. Cosgrove, his attorney, and since that time he had not seen it. He could not truthfully say that he had not seen it if he had it in his possession. It would have strengthened plaintiff's case had he shown by the grantors that they signed the deed or by the notary that he had taken their acknowledgment of its execution, but we cannot say that such proof was indispensable. The code provides that the original writing must be produced and proved, except where it is lost or destroyed, in which case proof of loss or destruction must be first made. If it has been lost and proof of that fact made, evidence of its contents may be taken by the recollection of witnesses. (Code Civ. Proc., secs. 1855, 1937.) We think the term "loss" as used in the statute means something different from destruction, for in the latter case loss would necessarily follow, but not so in case of loss. The instrument may be lost for all practical purposes of the trial when it cannot be found after diligent

search and yet it may exist. We do not think that reasonable diligence in making the search should require the exploration of all possible places where the instrument might be.

Whether a sufficient foundation was laid to justify secondary evidence is a question of law and the evidence may be examined by the appellate court to determine its sufficiency. Still, no arbitrary or hard-and-fast rule can be laid down by which to judge the evidence. The rule stated by Mr. Greenleaf is as follows: "If the instrument is lost, the party is required to give some evidence that such a paper once existed, though slight evidence is sufficient for this purpose, and that a *bona fide* and diligent search has been unsuccessfully made for it in the place where it is most likely to be found, if the nature of the case admits such proof; after which his own affidavit is admissible to the fact of its loss. . . . What degree of diligence in the search is necessary, it is not easy to define, as each case depends much upon its peculiar circumstances; and the question, whether the loss of the instrument is sufficiently proved to admit secondary evidence of its contents, is to be determined by the court and not by the jury. But it seems that, in general, the party is expected to show that he has in good faith exhausted, in a reasonable degree, all the sources of information and means of discovery which the nature of the case would naturally suggest, and which were accessible to him. It should be recollected that the subject of the proof is merely to establish a reasonable presumption of the loss of the instrument, and that this is a preliminary inquiry addressed to the discretion of the judge. If the paper was supposed to be of little value, or is ancient, a less degree of diligence will be demanded, as it will be aided by the presumption of loss which these circumstances afford." (1 Greenleaf on Evidence, 16th ed., sec. 5636.)

The surrounding circumstances and facts are to be taken into consideration; the presence or absence of pecuniary interest or other improper motive in seeking to substitute secondary for the best evidence; the probability that the instrument was materially different from that sought to be established by the oral proof; the effect such proof would have upon the rights of the person seeking to exclude it; the

character of the witnesses and their relation to the transaction as interested parties or otherwise. These and other matters that might be suggested are fair subjects for consideration and the weight to be given them is largely within the discretion of the trial judge.

In the case here the title to the property passed to the Kings—father and his two sons—by Cole's deed. Plaintiff has a third interest by virtue of that deed. Proof that the father and the other son conveyed to plaintiff could not affect the title of defendant, for he has none, and as they are not parties to the action a judgment resting on such proof could not affect their interest. At most it would only meet the technical rule of law that plaintiff in the action must rely upon the strength of his own title and not upon the weakness or failure of his adversary's. No motive of self-interest can be imputed to Mr. Cosgrove, nor can a reasonable belief be entertained that he would falsify the contents of the deed drawn by him, or that he could have had any possible interest in concealing it, his testimony being that its sole purpose was to pass to plaintiff the interest held by his father and brother. Besides, his testimony was that the brother in fact executed and acknowledged the deed in his office, and, while this fact does not bear directly upon the fact that the deed was afterward lost, it is a fact not to be ignored in considering the weight to be given Mr. Cosgrove's testimony as to the loss or disappearance of the deed. Most of the cases cited by appellant were cases where the secondary evidence was vital in determining in whom the title was vested—plaintiff or defendant. But here the result must be to quiet plaintiff's title to one-third interest in the property, leaving the other two-thirds to be determined possibly in another action, but in no event to belong to defendant. In our opinion there was a sufficient foundation laid to admit the secondary evidence offered.

Most of the rulings upon the evidence complained of depend upon the view of the law taken by defendant as to which we have expressed our disagreement with him and have thus disposed of them. Some of these rulings have been noticed in the course of the opinion and others will at once be seen to be either free from error or not prejudicial from our standpoint of the main question to which the rulings re-

lated. We have examined the other rulings to which exception was taken and fail to discover such prejudicial error as would, under the view we have taken of the case, warrant a reversal. This view also makes it unnecessary to consider the motion for a nonsuit.

The judgment and order are affirmed.

Burnett, J., and Hart, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on December 23, 1907, and the following opinion was then rendered thereon:

CHIPMAN, P. J.—Petition for rehearing. We do not feel called upon to write opinions in all cases where rehearings are denied or granted, and where we fail to do so it is through no indifference to the views of counsel, but because our attention is invited to no question, necessary to the decision, which has not in our judgment been sufficiently noticed. Where some more or less vital question has been overlooked or insufficiently treated it would seem but just that further consideration to it should be given. The court invites careful scrutiny of its decisions and deems it a favor to be given an opportunity to correct errors which it may have committed.

Our attention is now invited to two points which counsel urges were either overlooked or not given due consideration. It is said that we "overlooked, as did the court below, the provisions of section 1069 of the Civil Code, which provides that a grant between private parties is to be interpreted in favor of the grantee"; and it is urged that if the several parts of a grant are absolutely irreconcilable, the former prevails. (Civ. Code, sec. 1070.) Where the question is simply one of construction the code rule should be followed. But the general rule that the earlier clause prevails is not imperative where the inconsistency or irreconcilability is so great as to justify extrinsic evidence to explain it. The code rule that a grant is to be interpreted in favor of the grantee must be read in connection with another code rule (Civ. Code, sec. 1654), which provides that where there is uncertainty the language of the instrument must be interpreted most strongly against the party who caused the uncertainty to exist. In the present case the deed under examination

was prepared by McKenzie, the attorney or agent of Mrs. Ross, and was executed at her request as thus prepared. We still think that the latter clause of the deed cannot be wholly ignored, but that extrinsic evidence was admissible to aid the court in arriving at the intention of the parties.

Upon the evidence it may be admitted that the trial court would have been justified in reaching a different conclusion as to the intention of the parties. Mrs. Ross testified that her intention in having the disputed clause inserted in the deed was to make sure that she would get the land west of the river. Her testimony is, in some respects, corroborated. On the other hand, the testimony of Cole leads to a different conclusion, certainly as to his intention in executing the deed and what he understood to be its purpose, and the conduct of Mrs. Ross in some degree weakened her statement. The testimony and also the documentary evidence on the point are in open conflict. It was the province of the trial judge to reconcile conflicting evidence and inferences derivable therefrom. If we are correct in our view that resort to extrinsic evidence was justified, the rule that where there is a substantial conflict this court will not interfere with the conclusions of the trial court leaves us without power to look farther. The manifestly firm and honest conviction of counsel for appellant that we are in error in holding that extrinsic evidence was admissible has led us to re-examine the question, but, with our present lights, we are still of the opinion that such evidence was properly taken. Indeed, this to our minds is the principal question in the case and, fortunately for appellant, if we are wrong, he has an adequate and speedy method to correct our error.

Rehearing is denied.

Hart, J., and Burnett, J., concurred.