[Civ. No. 753.   First Appellate District.—April 19, 1910.]

## A. E. HOUSE, Appellant, v. J. P. PONCE, Respondent.

ACTION TO QUIET TITLE—POSSESSION OF DEFENDANT—DEFENSE OF TAX
TITLE—BURDEN OF PROOF.—Where the complaint in an action to
quiet title alleged ownership and right of possession of the lots in
controversy, and possession by the defendant, who took issue on
plaintiff's ownership, and set up a tax title in himself acquired from
the state, the burden of proof is upon the plaintiff to show title
in himself, to overcome the possession of the defendant; and if he
fails in such proof, it is not necessary to inquire into his objections
to defendant's tax title, for if he has no title, he could not dis-
turb defendant's possession, and it was not his business as to
whether or not defendant's paper title was perfect.

ID.—TITLE ASSERTED UNDER QUITCLAIM DEED—BONA FIDE PURCHASE
NOT SHOWN—WANT OF CONSIDERATION—ABSENCE OF TITLE—PRIOR
DEEDS.—Where the evidence of title in plaintiff was by virtue of a
quitclaim deed of the lots to his predecessor from one who owned
the lots at the time of the assessment for taxes and sale to the
state, and there was no evidence that plaintiff paid any value for
the transfer to him, but it was proved that no consideration was
paid for the quitclaim deed, and that the grantor prior thereto had
sold and conveyed all the lots to third persons, the evidence shows
the absence of the title asserted by the plaintiff.

ID.—EFFECT OF PRIOR DEEDS—RECORD NOT SHOWN.—The prior deeds
by the grantor of the quitclaim deed, though not shown to have
been recorded, were good and passed title as to all persons, save a
subsequent purchaser or mortgagee in good faith, and for a
valuable consideration.

ID.—EFFECT OF QUITCLAIM DEED—NOTICE TO GRANTEE—ASSUMPTION OF
RISK OF TITLE.—The fact that the grantor refused to make any
other deed than a quitclaim was notice to the grantee sufficient to
put him on inquiry as to the grantor's title. In the absence of
such inquiry, he assumed all risks as to title, and knew that he was
taking only such title as might be left in the grantor. If, in fact,
no title was left in him to convey, none was conveyed.

ID.—INEQUITABLE PURPOSE OF PROCURING QUITCLAIM TITLE—ASSAULT
UPON TAX TITLE.—If plaintiff procured the quitclaim title for the
purpose of acquiring a standing upon which to come into court and
attack defendant's tax title, such purpose does not commend itself
to a court of equity. The defendant being in possession under a
deed from the state, regular in form, for which he paid a valuable
consideration, and thus enabled the state and county to collect the
taxes, which had been assessed upon the lots, cannot be disturbed

for light or trivial reasons, or by a stranger who had nothing but a quitclaim from one who had no title.

ID.—AIM OF LAW—UNJUST CLAIM NOT ENFORCED.—The law aims to do justice and prevent wrongs, and will not grant affirmative aid to one who proves no title to relief and relies upon a mere piece of paper made without consideration by one having no title.

ID.—EVIDENCE SHOWING WANT OF TITLE—TESTIMONY OF GRANTOR OF QUITCLAIM DEED—DECLARATIONS IMPEACHING TITLE NOT INVOLVED. The testimony of the grantor of the quitclaim deed was properly admitted to show that he sold and conveyed all the lots he owned prior to the quitclaim deed, and that at that time he had no lots, and conveyed nothing when he made the quitclaim deed. Such evidence does not involve any declarations tending to impeach the title conveyed.

APPEAL from a judgment of the Superior Court of Santa Clara County.   J. R. Welch, Judge.

The facts are stated in the opinion of the court.

A. H. Jarman, for Appellant.

Rogers, Bloomingdale & Free, for Respondent.

COOPER, P. J.—This action was brought for the purpose of quieting plaintiff's alleged title to certain lots described in the complaint as being in College Terrace in Santa Clara county.   Defendant had judgment, and plaintiff prosecutes this appeal from the judgment on the judgment-roll accompanied by a bill of exceptions.

The complaint alleged that the plaintiff was the owner and entitled to the possession of the lots, and that defendant. was in possession thereof claiming some interest or estate therein. The answer denied the ownership of the plaintiff, and alleged the possession and right to the possession of the said lots in defendant.   It further alleged that said lots were sold to the state of California on the twenty-sixth day of June, 1896, for delinquent taxes assessed and levied thereon for the year 1895; that thereafter on the twenty-seventh day of August, 1901, in pursuance of such sale, a deed to said lots was duly executed by the tax collector to the state of California; that thereafter, on the twentieth day of January, 1905, the state sold said lots according to law to defendant, who was the

highest bidder, for the sum of $181, and in pursuance of such sale of the tax collector executed and delivered to defendant a deed to said premises, which deed defendant has placed of record.

The court found that the plaintiff was not at any time the owner nor entitled to the possession of said lots; that the defendant was the owner, in the possession, and entitled to the possession thereof. The court also found that all the proceedings as set forth in the answer from the said assessment up to and including the execution of the deed to defendant, were regular, and that the tax deed was valid and conveyed a valid title to defendant.

Plaintiff contends that there were several irregularities in regard to the assessment, the notice of sale, the manner of sale and the amount thereof, sufficient to justify us in holding the tax deed void. In view of the conclusion we have reached it is not necessary to examine nor to discuss the several alleged informalities in the proceedings by which the tax deed was finally executed and delivered to defendant. It is well settled that the plaintiff, having alleged that he was the owner of the lots and entitled to the possession thereof, was required to prove that he was such owner, and the burden was upon him to make such proof. He was entitled to relief only upon showing title in himself, for if he had no title he could not disturb even the possession of defendant, and it was not his business as to whether or not defendant's paper title was perfect. (*Martin* v. *Lloyd,* 94 Cal. 195, [29 Pac. 491]; *Winter* v. *McMillan,* 87 Cal. 256, [22 Am. St. Rep. 243, 25 Pac. 407]; *Heney* v. *Pesoli,* 109 Cal. 53, [41 Pac. 819]; *McGrath* v. *Wallace,* 116 Cal. 549, [48 Pac. 719].)

It may be conceded that at the time of the assessment and also at the time of the sale to the state the lots were owned by one Alexander Gordon. The record shows that plaintiff in proof of his title introduced in evidence a deed of said Gordon to one Farley, followed by a deed from said Farley to plaintiff. It does not appear that the deeds were read in evidence; nor is there anything as to the date or contents other than the statement that the deeds conveyed the property described in the amended complaint. This statement, of course, can mean nothing more than that the deeds were correct in form and purported to convey the premises as de-

scribed in the amended complaint. Defendant called Gordon as a witness, and he testified that about February, 1906, said Farley came to the witness' house claiming to represent some-one else, and wanted to get a deed to the lots; that Farley presented a bargain and sale deed, which witness declined to sign, but he finally, after some conversation, signed a quitclaim deed to Farley; that witness received no consideration for the deed; that witness at the time he made said quitclaim deed to Farley did not own the lots, but had conveyed two of them to W. J. Walsh in May, 1888, two of them to John Robinson in April, 1889, and the other two to Levi Van Fossen in 1893; that witness had disposed of all of said lots and given deeds to them prior to 1895. These deeds, although it does not appear that they were recorded, were good as to all persons save a subsequent purchaser or mortgagee in good faith and for a valuable consideration (Civ. Code, sec. 1214). The evidence of Gordon is not contradicted, and plainly shows that no title was in him when he conveyed to Farley. There is not a word of evidence even tending to show that plaintiff paid any consideration for the lots, or that he was a *bona fide* purchaser. The fact that Gordon refused to make any other than a quitclaim deed was notice to Farley, and sufficient to put him upon inquiry. The grantee in said quitclaim deed assumed all risks as to title. He took, and knew he was taking, only such title as was left in Gordon. There being no title in Gordon nothing was conveyed. There is no explanation as to why the plaintiff procured the quitclaim deed. If he did it for the purpose of acquiring a standing upon which to come into court and attack the defendant's tax title, such purpose does not commend itself to a court of equity. The defendant being in possession under a deed from the state, regular in form, for which he paid a valuable consideration, and thus enabled the state and county to collect the taxes which had been assessed upon the lots, cannot be disturbed for light or trivial reasons, or by a stranger who has nothing but a quitclaim deed from one who had no title. The law aims to do justice and prevent wrongs. One claiming its affirmative aid to quiet his title must prove such title, and not rely upon a mere piece of paper made without consideration by one who had no title.

The testimony of Gordon was properly admitted. It was not in the nature of declarations tending to impeach the title which he had conveyed by the quitclaim deed, but was for the purpose of showing that he in effect had nothing to convey, and conveyed nothing at the time he made the quitclaim deed.

The judgment is affirmed.

Hall, J., and Kerrigan, J., concurred.