MANUEL VISITACIÓN RIVERA COLÓN, Appellant, v. REGISTRAR OF PROPERTY OF GUAYAMA, Respondent.

No. 957. Submitted November 4, 1935.—Decided December 12, 1935.

*C. Domínguez Rubio* for appellant. The registrar appeared by brief.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

In May 1905, a parcel of eleven *cuerdas* of land was sold for taxes as the property of Bonifacio Aquilino Díaz, and recorded in the name of The People of Puerto Rico. Sections 1 and 2 of an act approved on March 11, 1915 (Session Laws, p. 52) read as follows:

"Section 1.—That the former owners of any real property that has been sold for the nonpayment of taxes and bid in in the name of The People of Porto Rico subsequent to July 1, 1901, and prior to July 1, 1914, and which is now in the possession of The People of Porto Rico or the legal heirs of such former owners, or assigns, or any one having any interest therein are hereby given the right to redeem said property within one year from the date that this Act takes effect upon payment to The People of Porto Rico of the price for which such real property was bid in, together with interest from the date of the auction sale at which such property was bid in at the rate of four and one-half per cent per annum.

"Section 2.—When the property to be redeemed has been registered in the name of The People of Porto Rico, the Treasurer of Porto Rico shall notify the registrar of property in whose office the said property has been registered, and the registrar of property upon the payment by the person so redeeming of a fee of one dollar, shall note upon the certificate of purchase by The People of Porto Rico the fact of such redemption and that the property so redeemed shall

remain subject to all liens and legal claims against it other than the tax liens for which it was sold, to the same extent and in the same manner as though said property had not been sold for taxes.''

Aquilino Díaz redeemed the property in June 1915, and in June 1917 it was for the first time recorded in his name. In June 1918, a deed of conveyance by Aquilino Díaz and his wife to Manuel Visitación Rivera Colón was recorded ''with the curable defect that it has not been shown that Petronila Rodríguez was the wife of the vendor at the time of the acquisition by the latter of the immovable which was sold.''

In June 1935, Manuel Visitación Rivera Colón attempted to cure the defect by submitting to the registrar certain documentary evidence. The pertinent portion of the registrar's ruling follows:

''The curing of the defect referred to in the foregoing instrument or petition is denied after consideration of four documents attached as supplementary, on the following grounds: 1, That none of the documents submitted shows the date when the immovable was first acquired; 2, that none of the said documents directly shows the civil status of Aquilino Díaz at the time he first acquired the immovable, because at the most they would prove by implication the civil status of the said vendor at the time of the redemption of the property; and 3, that the registrar is not warranted, in view of the documentary evidence, to reach conclusions which do not clearly appear from the said documents. . . . ''

The evidence, says appellant, shows:

''A.—The birth of Josefa Díaz Rodríguez, the daughter of Aquilino Díaz and Petronila Rodríguez, on May 7, 1865.

''B.—The death of Petronila Rodríguez on July 4, 1917.

''C.—The death of Aquilino Díaz on June 19, 1927.

''D.—That the marriage certificate of Aquilino Díaz and Petronila Rodríguez could not be found in the parochial registry of Barranquitas.''

The entry of June 1918 was not made by the same registrar of property who construed that entry in the ruling

now appealed from. Appellant insists that the date of acquisition referred to in the previous entry was the date upon which the vendor "acquired" the property in question from The People of Puerto Rico, not the date upon which he acquired the same originally as contended by the registrar. He admits that if the previous entry refers to the date of original acquisition the other questions discussed in his brief are more or less academic.

Section 352 of the Political Code (Comp. Stat. 1911, section 3018) reads in part as follows:

"That every piece of real property offered at public sale for the nonpayment of taxes, and not sold for want of bids sufficient to cover all taxes, penalties and costs thereon, may be purchased by the collector or agent in the name of The People of Porto Rico at any sale after the first offering of such property at public auction. The collector or agent shall make a public bid for such property in the amount of said taxes, penalties and costs, and if no higher bid be offered he shall make out and cause to be recorded in the registry of property of the district a certificate of purchase to The People of Porto Rico, which shall contain the statement and description of the property provided for in section 347. If the right of redemption hereinafter provided for is not exercised within the time prescribed, said certificate, when recorded in the office of the registrar of property of the district in which the property is situated, shall vest the title to said property absolutely in The People of Porto Rico free from all mortgages, liens or other encumbrances. * * * The owner of said property at the time of its sale for nonpayment of taxes, his heirs or assigns, or any one having any right or interest therein, may redeem the same within a period of one year from the issue of said certificate by the payment of the amount for which the property was bid in for The People of Porto Rico, with interest thereon at the rate of twelve per cent, per annum, from the date of the sale, and may require the Treasurer of Porto Rico to have such redemption noted by the registrar of property against the certificate of purchase upon the payment by the person redeeming to the registrar, for such service, of a fee of one dollar, and said annotation shall operate as a release and cancellation of the certificate of purchase, and the property so released shall remain subject to all liens and legal claims against it, other than tax-liens, to the same

extent and in the same manner as though said property had not been sold for taxes.''

If the Act of 1915 had provided for a reconveyance by the People of Puerto Rico instead of a privilege of redemption, there would be more force in appellant's contention that Aquilino Díaz ''acquired'' the property from The People of Puerto Rico in June 1915, and that the mention of a curable defect, made in June 1918, referred to the date of such acquisition. See *Curtin* v. *Kingsbury,* 159 Pac. 830, 832; *Louis* v. *Tipton,* 222 Pac. 661, 662; *Grand Rapids Trust Co.* v. *Doctor,* 192 N. W. 641.

The People of Puerto Rico, however, as absolute owner, had the power to provide for a redemption instead of a reconveyance, and this is what the Legislature did in 1915. Aquilino Díaz was a redemptioner, not a purchaser. He took no new title, but was restored to his title as it stood prior to the tax sale. Cooley on Taxation, 2d edition, p. 542; Black on Tax Sales, 2d edition, p. 436; *Jenks* v. *Wright,* 61 Pa. St. Rep. 410; *Steiner* v. *Coxe,* 4 Pa. St. Rep. 13; *Hernández* v. *Costa,* 16 P.R.R. 423; 61 Corpus Juris, p. 1287; *Bente* v. *Sullivan,* 115 S. W. 350; *Sunderman Investment Co.* v. *Croighead,* 173 S. W. 653. Hence, we think the registrar was right in construing the previous entry made by his predecessor in office as referring to the date of original acquisition and not to the date of redemption. If the registrar who made the previous entry had meant to specify the date of redemption instead of the date of original acquisition he would have used the word ''redeemed,'' instead of the word ''acquired.''

The fact that Díaz was married to Petronila Rodríguez from 1865 to 1917, coupled with the fact that he died at the age of ninety in 1927, did not exclude the possibility of a previous marriage nor the possibility, however remote, of acquisition during the existence of such previous marriage. Hence, the registrar was also right in holding that the evidence submitted to him was not enough to cure the defect

referred to in the previous entry. Any error involved in other aspects of the ruling appealed from would not require a reversal.

It may seem superfluous to say that we are not now concerned with any question as to the necessity or propriety of the reference in the previous entry to a curable defect. The only question open to discussion in the present appeal was the question just decided as to whether or not the so-called defect was cured by the documentary evidence submitted to the registrar. We would not be understood as having passed upon any other.

The ruling appealed from must be affirmed.