[Civ. No. 1552.   Third Appellate District.—July 6, 1916.]

## C. CURTIN et al., Petitioners, v. W. S. KINGSBURY, etc., Respondent.

SCHOOL LANDS—REDEMPTION FROM DELINQUENT TAX SALES—FAILURE
TO PAY INTEREST—EFFECT OF ACT OF MAY 14, 1915.—Purchasers
of school lands sold to the state for delinquent taxes in the year
1907, and for which a deed to the state was made in the year 1912,
are not entitled to redeem, where they did not, prior to the going
into effect of the act of May 14, 1915 (Stats. 1915, p. 605), pro-
viding that "the unsold portions of the sixteenth and thirty-sixth
sections of school lands . . . shall be sold at public auction by the
surveyor-general," make a payment of all interest due and unpaid
on the land as required by section 3788 of the Political Code under
the amendment of March 2, 1909 (Stats. 1909, p. 122), along with
their payment of the taxes, penalties, and accruing costs.

ID.—STATUS OF DEFAULTING PURCHASERS — RESTORATION—COMPLIANCE
WITH EXISTING LAWS.—Upon a sale made to the state of school
lands for nonpayment of taxes followed by a deed to the state there-
for, all rights of defaulting purchasers in such lands are extin-
guished, and the only method by which they can be restored to their
former rights is by compliance with the law existing at the time of
making application for such restoration.

ID.—CONDITIONS TO RESTORATION — RIGHT OF STATE TO IMPOSE.—The
state under such circumstances has the right, as the absolute owner
of the lands, to dictate the terms upon which they may be repur-
chased by the original or a new purchaser, or the conditions upon
which the owners or purchasers or their assigns may be restored to
their original state or title.

ID.—PAYMENT OF INTEREST AS CONDITION TO REDEMPTION—REASONABLE-
NESS OF METHOD.—The method provided by the amendment of 1909
to section 3788 of the Political Code (repealed by the act of 1915)
of enforcing payment of interest as a condition to the repurchase
or redemption of school lands sold for nonpayment of taxes is not
more burdensome than the former method of foreclosure.

APPLICATION for a Writ of Mandate originally made
to the District Court of Appeal for the Third Appellate Dis-
trict, to compel the surveyor-general to issue a certificate of
purchase of school lands.

The facts are stated in the opinion of the court.

W. H. Larew, and Jos. Barcroft, for Petitioners.

U. S. Webb, Attorney-General, and Robert T. McKisick, Deputy Attorney-General, for Respondent.

CHIPMAN, P. J.—Mandate. It appears by the petition that, on November 19, 1901, the state of California issued its certificate of purchase to one J. Frank Miller for all of section 36, township 9 south, range 19 east, M. D. B. & M., in Madera County, for which he paid twenty per cent of the purchase price of $1.25 per acre, said land being "only fit for grazing purposes"; that there remained due to the state one dollar per acre, or $640, with interest at seven per cent per annum; that, in 1904, said Miller assigned said certificate of purchase to plaintiff Curtin and W. C. Hensley, who "entered into the possession of said land and became and were the sole owners thereof, subject only to the paramount title of the state." On February 21, 1910, said Hensley died and thereupon petitioner R. C. Jay was appointed and now is administrator of his estate. On June 22, 1907, the land in controversy was sold to the state for nonpayment of taxes, followed by a deed to the state dated July 16, 1912. On June 13, 1913, petitioner Curtin applied for and received from the auditor of Madera County an estimate of the amount necessary to redeem said land from tax sale, and, on the same day, paid to the treasurer of said county the amount of said estimate, together with other delinquent taxes on the land, which "redemption was duly recorded, and it was noted upon the recorded certificate and the recorded tax deed that the land was redeemed"; on September 10, 1915, at the request of petitioners, the auditor and treasurer furnished them "a statement of all interest then due and unpaid on said" land, and petitioners paid to the treasurer the amount shown by said statement. It is then alleged that the certificate of sale issued to said Miller has been lost, and that the defendant refuses to accept from the treasurer of Madera County the amounts paid by petitioners and refuses to issue a new certificate of purchase in lieu of the lost one. It is alleged, upon information and belief, that there are no claims adverse to petitioners to said land. There is also an allegation "that no foreclosure for nonpayment of interest ever was had or attempted in the matter of the delinquency in payment of

interest as provided in the Political Code or at all; that the certificate of purchase remains uncanceled by any foreclosure." The prayer is for an alternative writ of mandate directing defendant to receive the moneys tendered by petitioners and to issue a new certificate of purchase in lieu of the lost one.

The issue presented is raised by a general demurrer filed by respondent to the petition.

By an act approved May 14, 1915 (Stats. 1915, p. 605), which, for convenience, will hereinafter be referred to as chapter 389, it was provided that "the unsold portions of the sixteenth and thirty-sixth sections of school lands . . . shall be sold at public auction by the surveyor-general." It is the contention of respondent that "under this method all applications to purchase school lands at a fixed statutory price are abolished. Nobody can apply to purchase lands of the character described in the act. Intending purchasers must attend the sale at the time and place stated in the notice of sale and there bid in open competition against any and all other persons who desire to acquire the land," and respondent maintains that "this act conflicts with the provisions of section 3788 of the Political Code *in toto,* and with so much of section 3817 as affects school lands"; that "under the law as it stood when the sale was made the sole remedy of the delinquent purchaser was to repurchase the land within six months from that date"; that the delinquent purchaser had no vested right to redeem the property, his only right being a preference given him to repurchase within six months; and that this privilege was withdrawn by chapter 389, *supra.*

Petitioners' reply to the above contention that "the state may diminish the penalties, extend the time for redemption or lessen the burden upon the delinquent taxpayer, but the state cannot increase the penalties, shorten the time for redemption, or add further penalties, burdens, and conditions of redemption, after the date of sale to the state," and "none of the statutes relied upon by the defendant purport to be retroactive."

The method prescribed by section 3817 of the Political Code in 1883 for the redemption of school lands sold for delinquent taxes applied only to purchasers who had paid "the full amount of one dollar and twenty-five cents per acre." (Stats. 1883, p. 23.) This section remained unchanged until

1895, when it was made to apply to purchasers "when the full amount of the purchase price of one dollar and twenty-five cents per acre has not been paid, except where the deed to the state, provided for in section three thousand seven hundred and eighty-five, has been filed with the surveyor-general." (Stats. 1895, pp. 308–340.) By this act there were many changes made in the sections of the Political Code relating to the sale, redemption, and disposition of lands sold for delinquent taxes. School lands were made subject to the act and were referred to in sections 3785 and 3788 as well as in section 3817. By section 3785 it was provided that where the full price for the land has not been paid and where the tax deed to the state has been forwarded by the county recorder to the surveyor-general, "the state shall dispose of such lands in the manner provided in section three thousand seven hundred and eighty-eight." Section 3788 provided that in such case "the said lands shall again become subject to entry and sale, in the same manner, and subject to the same conditions, as apply to other state lands of like character, except that the former possessors or owners of the land thus deeded to the state, their heirs or assigns, shall be preferred purchasers thereof for the period of six months after the deeds are filed with the surveyor-general." It was required of the intending purchaser that as a condition to his purchase he should pay, in addition to the price of the land, all delinquent taxes, penalties, costs, and accrued costs prior to and subsequent to the date of sale to the state. The sections of the Political Code as amended by the act of 1895 was the law of 1901, when the purchase was made by plaintiffs' assignor. By that act (sec. 3788, Pol. Code) the right given to the purchaser whose land had been sold to the state for delinquent taxes was not to redeem, as was the right given by the act of 1883, but was a right to become a purchaser in preference to any other person if, when application was made, there was no other conflicting application. His rights were no greater than those of any other purchaser, except that he was a preferred purchaser for a limited period.

We have seen that the taxes became delinquent and the land was sold to the state in 1907 and a deed made to the state in 1912, which was duly filed with the surveyor-general. Had no other statute intervened, plaintiffs' right would have been that of a preferred purchaser and not of a redemptioner.

Section 3817 was amended in 1897, 1901, and 1905, but not affecting that part of the section referring to school lands. In 1909 the legislature added to the section the following: "and an application has been filed therefor in that office." This act was passed February 22, 1909, and took effect sixty days thereafter. (Stats. 1909, p. 42.) At the same session, on March 2, 1909, section 3788 was also amended, retaining the provision making the former possessor or owner of the lands sold a preferred purchaser for a period of six months after the filing of the deed in the office of the surveyor-general. And it was further provided: "That the former possessors or owners of said land thus deeded to the state, their heirs or assigns, shall have the right to be restored to their former state and title (at any time either during the said period of six months above referred to, or afterward, and before application for said land is made and filed with the surveyor-general by any other person) upon paying to the county treasurer"—1. A sum equivalent to the taxes, penalties, and accruing costs; 2. All delinquent taxes, penalties, and costs which have accrued upon such lands subsequent to the date of the certificate of purchase under which the former possessors or owner, or their heirs or assigns, claimed title to said lands; 3. Also all unpaid interest up to the first day of January following the day when he shall make payment to the county treasurer. (Stats. 1909, p. 122.)

The payments made by plaintiffs to the county treasurer, as appears from the petition, seem to have been made as redemptioners, whereas, whatever right they had was given to them by the statute as preferred purchasers. It is perhaps immaterial whether these payments were made as redemptioners or as purchasers if they were sufficient to comply with the law applicable when the payments were made. Now, the sale to the state for delinquent taxes extinguished all rights of plaintiffs to the lands subject to the right of redemption during the five years' period and before the deed passes the legal title to the state. Such sale vests the equitable and the deed the legal title of the land in the state. (*Santa Barbara County* v. *Savings & Loan Soc.*, 137 Cal. 463, 465, [70 Pac. 457].) As against the state the property owner at the end of five years has forfeited all rights to the property, except the privilege accorded him by the statute of redeeming it at any time before the state actually enters, sells, or

disposes of it. (*Baird* v. *Monroe,* 150 Cal. 560, 567, [89 Pac. 352].) The state had the power to say upon what terms and in what manner the title thus vested in the state might be divested. It could have denied all right to redeem or to purchase.

In 1907, when the land was sold for delinquent taxes, plaintiffs' right under the amendments to the Political Code by the act of 1895 was that of a preferred purchaser for the period of six months after the deed is filed with the surveyor-general. (Pol. Code, sec. 3788.) They did not avail themselves of that right, and it was lost to them. By the acts of 1909 the state offered to restore them "to their former state and title" upon conditions more favorable than were given by the act of 1895, for they were allowed to comply with the statute as preferred purchasers within six months, and were to be restored to their title at any time before another application was made for the same land, and upon terms no different than were imposed by the act of 1895, except that the payment of interest upon the unpaid purchase price was required to be paid. As this was an obligation attached to the original contract, its payment cannot be regarded as an additional burden. But whether it was or not, we think the state had the right, as the absolute owner of the land under the tax deed, to dictate the terms upon which it might be repurchased by the original or a new purchaser, or the conditions upon which the purchasers or owners or their assigns might be restored to their original state and title.

The payments made by the plaintiffs to the county treasurer were made June 13, 1913, at which time no other application had been made to purchase the land, but the payment did not include interest, and no interest was then paid or tendered, and, on September 10, 1915, they again attempted to redeem from delinquent tax sale by paying the then accrued taxes, penalties, and costs, and they also paid to the auditor and treasurer of Madera County "all interest then due and unpaid on said land."

It appears from the petition that, on July 15, 1915, the surveyor-general advised petitioners that said land could be redeemed under section 3788 of the Political Code, but also advised petitioners of the act of 1915, S. B. 906, chapter 389 (copy of which was inclosed in the letter of advice), stating that said "act became effective August 8, 1915, superseding

section 3788 of the Political Code," and that, in the opinion
of the surevyor-general, "all land that had been sold to the
state for nonpayment of taxes wherein the tax deed was filed
in this office, would be subject to sale under the provisions
of said S. B. 906. Inasmuch as the land was not redeemed
on or before August 8, 1915, this office considers [describing
the land] to be vacant state land and subject to sale under
the provisions of S. B. 906." Petitioners were, therefore,
fully aware of the attitude of the state, and that they were
required to make payment. on or before August 8, 1915, in
order to preserve their rights. This they did not do.

The act of 1915 provided: "Section 1. The unsold por-
tions of the sixteenth and thirty-sixth sections of school lands
. . . shall be sold at public auction by the surveyor-general.
. . . Sec. 3. Those parts of all acts in conflict with this act
are hereby repealed." (Stats. 1915, p. 605.) Without ques-
tion, section 3788 of the Political Code is in conflict with this
act and is thereby repealed so far as it provided a different
method for the disposition of school land.

We do not think petitioners had any vested right which
was violated by the act of 1915. The absolute title to the
land, as we have said, vested in the state by the tax deed,
and the state could provide any method it chose for the subse-
quent disposition of the land, and could at any time change
such method without impairing the right of any applicant to
purchase who had not complied with the then existing law.

Petitioners claim that "the penalty provided by law for
the nonpayment of interest is foreclosure, whereby the prin-
cipal paid upon the purchase price becomes forfeited and the
certificates canceled upon foreclosure and not otherwise."
And it is hence contended that as there has been no such
foreclosure, petitioners were not required to pay accrued in-
terest as a condition to the repurchase or redemption of the
land, and that it was a violation of their contract to require
such payment.

It was held in the recent case of *Aikins* v. *Kingsbury,* 170
Cal. 674, [151 Pac. 145], that "the method of procedure by
the act of 1867–68, for terminating the right of a defaulting
purchaser of school lands purchased under that act was not
exclusive, and he may not complain of a different method of
procedure subsequently established by the state for accom-
plishing that end which did not impose upon him more bur-

densome conditions than the former.'' (Syllabus.) As above suggested, we do not think the method of enforcing payment of interest by making it a condition for repurchase or redemption where the land is sold for nonpayment of delinquent taxes, is any more burdensome than to enforce payment by foreclosure. Certainly it is less expensive and less annoying to the intending purchaser or redemptioner. But aside from this consideration, we think, as already pointed out, the sale to the state for nonpayment of taxes culminating in a deed to the state extinguished all rights of petitioners, and that they thereafter could be restored to their former or any rights only by compliance with the law existing at the time they might apply for such restoration.

The writ is denied.

Hart, J., and Ellison, J., *pro tem.*, concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 1, 1916.