[L. A. No. 16780. In Bank.—June 28, 1938.]

CITY OF CULVER CITY (a Municipal Corporation), Petitioner, v. VINCENT M. REESE, as Engineer of Work, etc., et al., Respondents.

M. Tellefson, City Attorney, O'Melveny, Tuller & Myers and James L. Beebe for Petitioner.

Clyde Woodworth for Respondents.

SHENK, J.—The petitioner, the City of Culver City, presents its application for the writ of *mandamus* to compel the respondents, Engineer of Work and Superintendent of Streets, respectively, to prepare a diagram of the property included within Acquisition and Improvement District No. 3 of the City of Culver City, and to make an assessment, both as provided by the Refunding Assessment Bond Act of 1935.

Acquisition and Improvement District No. 3 of the City of Culver City was formed under the provisions of the Acquisition and Improvement Bond Act of 1925 as amended. (Stats. 1925, p. 849; Stats. 1927, pp. 1358, 1804, 1886.) The district lies partly within the City of Culver City and partly within the city of Los Angeles. Bonds of the district were issued in the principal sum of $50,580.60, bearing interest at seven per cent. They were issued to mature $2,800 annu-

ally in the years 1931 to 1948, inclusive. In February, 1938, unpaid principal on outstanding bonds amounted to $41,-980.60, of which $11,000 was past due. The interest due and unpaid was $11,569.12. The percentage of tax delinquencies had steadily increased annually to over eighty per cent. The petitioner, which had conducted the original proceedings, instituted a proceeding to refund the indebtedness of the district under the Refunding Assessment Bond Act of 1935. (Stats. 1935, p. 2023; Stats. 1937, p. 1675; Stats. 1938, Ex. Session, p. 73, ch. 13.) The total of the refunding bonds noticed to be issued is the sum of $35,000 to mature in ten annual instalments with interest reduced to six per cent.

The consent of all necessary parties was obtained and the proceedings duly progressed to the point where the respondents had refused to comply with the respective demands to perform the duties imposed upon them by the provisions of the act. As a return to the alternative writ the respondents have filed a general demurrer to the petition.

The ground of the refusal of the respondents to comply with the request to prepare a diagram and to make the assessment is that certain provisions of the Refunding Assessment Bond Act, as they apply to assessment districts lying within two municipalities, are unconstitutional. A general inquiry into the constitutional validity of the 1935 act was made and the act upheld in the case of *City of Los Angeles* v. *Aldrich*, 8 Cal. (2d) 541 [66 Pac. (2d) 647]. That case involved the validity of the act as applied to proceedings to refund the indebtedness of an assessment district lying wholly within the limits of the city of Los Angeles. In the course of the decision in that case (pp. 546, 547), we said: ''It is urged that the act is void because it provides for a refunding proceeding involving more than one jurisdiction. Where the *ad valorem* assessment district extends into both incorporated and unincorporated territory, section 5 of the act designates the legislative body which conducted the original proceedings as the body to conduct the refunding proceedings. By section 24, at any tax delinquent sale which is held pursuant to the act, the county is deemed the real purchaser of delinquent property lying within unincorporated area and, as provided by section 25, must levy a limited tax not to exceed ten cents on each one hundred dollars of assessable property, to pay for the lands purchased or to be purchased at such tax sales. It

is contended that this contemplates a gift of public money and a pledge of the county's credit to a municipal corporation which has conducted the original proceedings in violation of section 31 of article IV of the Constitution. The same general answer might be made to this contention as is given in the foregoing cited cases, viz., that such funds are used for a public purpose, for which the county might have used them in the first instance, and are therefore used for the benefit of the county and not of a city or any individual. However, in the present case the improvement district does not extend beyond the territorial limits of the city. Any different answer which might be made to the question in a proper case, pursuant to the provisions of section 31 of the Refunding Assessment Bond Act of 1935 would not render the balance of the act unconstitutional.''

We are now met with a case involving the question there left open, namely, whether there is any constitutional infirmity in the application of the provisions of sections 24 and 25 of the act where the district lies within two or more jurisdictions.

By section 24 of the act the city or county is required at any delinquent tax sale to purchase the delinquent property and must pay into the bond redemption fund the amount of the delinquent assessment and interest. It is also required to transfer to the bond redemption fund the amount of any future assessment and interest pending redemption. Section 25 provides for a special tax levy, not to exceed ten cents on each $100 of assessable property; for the purpose of paying for the lands purchased, and for any such future assessment. The section then reads: ''In the event that the district lies partly in unincorporated territory of the county and partly within one or more municipalities or lies within two or more municipalities, a certified copy of the resolution determining the amounts of the assessments remaining unpaid upon the security of which the refunding bonds are issued shall be filed . . . and for any such proceeding in which the lands assessed lie in more than one jurisdiction the auditor of the county in which the assessment district lies shall perform the duties imposed upon an auditor under this act and the tax collector of such county shall perform the duties imposed upon a tax collector under this act. In case the lands assessed lie in more than one jurisdiction, in the event of the delinquency in

the payment of any assessment levied hereunder and a sale to the state therefor, the county shall be deemed the real purchaser of all parcels sold which lie within unincorporated territory of the county and the city shall be deemed the real purchaser of all parcels sold which lie within the boundaries of the city, and each such city or county must make payment for the lands of which it is deemed the real purchaser, and if there are no available funds in the treasury with which to make such payment the legislative body of such city or county must, at the time of fixing the annual tax rate and levying the taxes to be collected for general municipal or county purposes, as the case may be, levy a special tax upon the taxable property in such city or county, as the case may be, for the purpose of paying for the lands purchased or to be purchased at such tax sales, or for the purpose of paying instalments of the assessment or of interest which the city or county is required to pay under the provisions of section 24 hereof, but not to exceed for each district the bonds of which are refunded ten cents on each one hundred dollars of assessable value in such city or county, as the case may be. Such special tax shall be in addition to all other taxes levied for municipal or county purposes and shall be computed, entered and collected in the same manner and by the same persons and at the same time and with the same penalties and interest as are other taxes of the city or county, as the case may be.''

It is urged that where, as here, territory in two cities is embraced within the assessment district, those provisions of the act are invalid which impose upon the county officials the duties to collect the assessments for the respective cities. It is alleged in the petition that both the city of Los Angeles and the City of Culver City have provided for the assessment and collection of city taxes by the assessor and tax collector of Los Angeles County. The 1925 act under which the district was organized also provided for the assessment and collection of taxes for the district by the county assessor and tax collector. We perceive no difficulty or invalidity by virtue of the similar provisions of the 1935 act referred to. The fact that the city or county, as the case may be, is required to purchase the delinquent property within its own confines, where the district is within more than one jurisdiction, does not transform into a strictly municipal affair that which was

otherwise an affair of the district or a matter of general public concern. The designation of the purchaser at the delinquent tax sales merely specifies the source of the payment of the purchase price for the delinquent properties and is intended as part of the plan for maintaining the solvency of the bond redemption fund. Those provisions, as held in the Aldrich case, are valid. ■ No invalidity exists merely in providing for the continuation of the assessment and collection of such taxes by the county officials, where that service had previously been performed by them as provided by the act. Undoubtedly the legislature concluded that greater economy and efficiency would result by thus concentrating the performance of those duties.

■ The respondents next invoke section 11 of article I of the state Constitution. They contend that the act is lacking in uniformity of operation where the lands assessed under section 25 lie within more than one city. They argue that the imposition of the special tax levy upon the assessable property in each city will result in double liability. The respondents state: " . . . each of said cities, if funds are not available for said purposes, must levy a special tax not to exceed for each district ten cents on each one hundred dollars of assessable value in such city. In other words, if the district lies within two municipalities the tax limitation is practically doubled."

The respondents have apparently misapprehended the precise function of the ten-cent limitation. Uniformity in imposing the liability on each jurisdiction for the purchase of delinquent lands and payment of future delinquent instalments, is not disturbed by the fact that any rate of the special tax levy under ten cents might be different for each of the cities within the district. The rate obviously will vary for each city, depending upon the proportion of delinquencies to the total assessable property within the city. ■ By the provisions of section 25 the legislature is not to be deemed to have imposed a tax, but as having placed a limitation upon the permissible special tax levy so that an excessive tax rate will not be imposed when the city without available funds is required to resort to the special tax levy in order to meet its obligations as the purchaser of delinquent property. Contrary to the respondents' contention the city's liability is not doubled, but is uniform in the pro-

portion that the amount of delinquency bears to the assessed value of all property in the city, as further restricted by the ten-cent limitation. ██ The language used by the respondents—"must levy a special tax not to exceed *for each district* ten cents on each one hundred dollars assessable valuation in such city", referring to the pertinent portion of section 25 hereinabove quoted—obviously relates to the situation where there is more than one district within the city, and not to the situation which the respondents have in mind, namely, where lands of the district lie within more than one city.

██ There is no constitutional objection in the advancement by the city of funds for the purpose indicated on the ground that the advancement amounts to a gift of public moneys or a pledge of the city's credit. This question was decided in the *County of Los Angeles* v. *Jones*, 6 Cal. (2d) 695 [59 Pac. (2d) 489], and *City of Los Angeles* v. *Aldrich, supra,* and the cases therein cited.

██ The foregoing discussion also answers adversely to their contention the respondents' claim that the provision for the special tax levy violates sections 12 and 13 of article XI of the state Constitution. Section 12 reads: "The legislature shall have no power to impose taxes upon counties, cities, towns or other public or municipal corporations, or upon the inhabitants or property thereof, for county, city, town or other municipal purposes but may, by general laws, vest in the corporate authorities thereof, the power to assess and collect taxes for such purposes." And section 13 provides: "The legislature shall not delegate to any special commission, private corporation, company, association or individual any power to make, control, appropriate, supervise or in any way interfere with any county, city, town or municipal improvement, money, property, or effects, whether held in trust or otherwise, or to levy taxes or assessments or perform any municipal function whatever. . . . "

The respondents' theory apparently is that the effect of the provision for a special tax levy is the imposition of a tax by the legislature, or the delegation to county officials to levy municipal taxes. They concede that the county officials do not directly make the tax levy. The validity of the provisions of the act utilizing the functions of the county assessor's and tax collector's office in specified instances as agencies of the municipalities within the district, has hereinbefore been

discussed and upheld. Moreover, it is sufficiently obvious without extended discussion that the pertinent provisions of the act were enacted pursuant to power vested in the legislature, that is, by general laws to authorize the appropriate officers to assess and collect taxes for specified purposes. (*American Co.* v. *City of Lakeport*, 220 Cal. 548 [32 Pac. (2d) 622].)

The respondents have advanced no valid ground for their refusal to perform the duties imposed on them by law and herein specified.

Let the peremptory writ issue as prayed.

Curtis, J., Seawell, J., Langdon, J., and Waste, C. J., concurred.