[S. F. No. 16809. In Bank. June 1, 1943.]

MERCURY HERALD COMPANY (a Corporation), Petitioner, v. MAURICE MOORE, as County Auditor, etc., Respondent.

270

Francis A. Zingheim and Chesley M. Douglas for Petitioners.

Robert W. Kenny, Attorney General, H. H. Linney, Assistant Attorney General, Adrian A. Kragen, Deputy Attorney General, J. H. O'Connor, County Counsel (Los Angeles), A. Curtis Smith, Deputy County Counsel, Paul A. McCarthy,

City Attorney (Redwood City), Ernest A. Wilson, City Attorney (San Mateo), and Kirkbride & Wilson as Amici Curiae on behalf of Petitioners.

John P. Fitzgerald, District Attorney (Santa Clara), and Leonard R. Avilla, Deputy District Attorney, for Respondent.

TRAYNOR, J.—Petitioner seeks by this proceeding in mandamus to compel the auditor of Santa Clara County to issue a warrant in payment of a claim for the publication of a notice to terminate the right of redemption pursuant to section 3574 of the Revenue and Taxation Code.

The real property described in the published notice was sold to the state on June 29, 1935, for nonpayment of county taxes for 1934-35. The law at that time required the tax collector to publish an annual delinquent list of property on which taxes for the past year were not paid. If the taxes remained unpaid the property was sold to the state. The practical effect of such a sale was to start the running of the five-year period of redemption. (*Crocker* v. *Scott*, 149 Cal. 575 [87 P. 102]; *In re Seick*, 46 Cal.App. 363 [189 P. 314].) If the property was not redeemed within the five years, or if the taxpayer failed to elect on or before April 20, 1936, to pay the delinquent taxes in installments (Pol. Code, sec. 3817c(3); extended to April 20, 1940, by Pol. Code, sec. 3817c (7), Stats. 1939, ch. 9) the property was deeded to the state. (Pol. Code, sec. 3785.) Thereafter, under the law in effect when the property in question was deeded to the state on July 1, 1940, the property could be sold by the tax collector at public auction upon the direction of the board of supervisors of the county and the authorization of the State Controller, if notice of sale was mailed to the last assessee at least 21 days but not more than 28 days before the proposed sale, and notice thereof published once a week for three weeks starting at least 21 days before the sale. (Pol. Code, secs. 3833-3834.25.) If the state did not dispose of the property it remained subject to redemption. (Pol. Code secs. 3817c (3), 3780.)

In 1941 the Legislature provided for the termination of the right of redemption upon execution of the deed to the state as to all property not in distressed assessment districts, deeded to the state on and after June 1, 1942. (Rev. and Tax.

Code, secs. 3511.3, 3511.5.) If the deed to the state was executed before June 1, 1942, as in the present case, notice of termination must be mailed to the last assessee within one year after June 1, 1942, or within six months after default under a plan of installment payments, whichever of the two dates is later. (Rev. and Tax Code, sec. 3572.) The tax collector must also publish the notice of termination of right of redemption once in a newspaper of general circulation published in the county, or, if none, by posting in three conspicuous places in the county, as to every assessee for whom no address is known, and for all property assessed to unknown owners. The publication must be made within 10 days after the notice is mailed. (Rev. and Tax. Code, sec. 3574.) If the property is not redeemed or installment payments commenced within four months after sending the notice, the right of redemption is terminated. (Rev. and Tax. Code, sec. 3575.) Since the legislation became effective June 1, 1941, the procedure that it established could not be set in motion for a year or more.

These provisions are an integral part of a plan to classify and rehabilitate tax-deeded property. The Legislature also provided for the appointment of a Land Classification Commission familiar with agricultural economics, real property taxation, conservation and regional planning, to classify tax-deeded property as desirable for public use, suitable for private ownership, or waste land. (Chap. 47, Stats. 1st Extra Session, 1940, Stats. 1941, p. 131.) The statute seeks to expedite the restoration of real property to the tax rolls. To that end it provides for the termination of the right of redemption to facilitate the use or rehabilitation of tax-deeded land while enabling the state to dispose of it more quickly and at a better price.

 It is contended that the termination of the right of redemption of the property here in question impairs the obligation of a contract. There is no contractual relationship, however, between the taxpayer and the state. (*Southern Service Co., Ltd.* v. *Los Angeles County*, 15 Cal.2d 1, 11 [97 P.2d 963]; *Perry* v. *Washburn*, 20 Cal. 318, 350; *Spurrier* v. *Neumiller*, 37 Cal.App. 683 [174 P. 338].) The position of the taxpayer is not that of a purchaser who enters into a contract with the state in purchasing the property. The taxpayer's own failure to pay the tax leads to the sale of the

land as an exercise of the sovereign power to collect the tax. (*Wood* v. *Lovett,* 313 U.S. 362, 371 [61 S.Ct. 938, 85 L.Ed 1404] ; *Yates* v. *Hawkins,* 46 N.M. 249 [126 P.2d 476, 478] ; see *Anglo California Nat. Bank* v. *Leland,* 9 Cal.2d 347 [70 P.2d 937] ; *Robinson* v. *Howe,* 13 Wis. 380, 386; *Muirhead* v. *Sands,* 111 Mich. 487 [69 N.W. 826, 828].)

 It is also contended that the right to redeem after the property has been deeded to the state but before it has been sold by the state is a property right, and that the legislation in question deprives the property owner of that right without due process of law. This contention takes no account of the distinction between the absolute right to redeem within the fixed period of five years from the date of sale to the state, and the conditional right to redeem once the property has been deeded to the state if the state does not sell the property. The deed to the state upon the expiration of the five-year period conveyed absolute title to the property free of any incumbrance except liens for certain taxes. (Pol. Code, sec. 3787; Rev. & Tax. Code, sec. 3520.) Upon execution of the deed the property owner forfeited all rights in the property except the privilege of redeeming it at any time before the state disposed of it. (*Buck* v. *Canty,* 162 Cal. 226 [121 P. 924] ; *Fox* v. *Wright,* 152 Cal. 59 [91 P. 1005] ; *Baird* v. *Monroe,* 150 Cal. 560 [89 P. 352] ; *Helvey* v. *Bank of America,* 43 Cal.App.2d 532 [111 P.2d 390] ; *Curtin* v. *Kingsbury,* 31 Cal. App. 57, 61 [159 P. 830] ; *Chapman* v. *Zobelein,* 19 Cal.App. 132 [124 P. 1021], aff'd 237 U.S. 135 [35 S.Ct. 518, 59 L.Ed. 874] ; *Young* v. *Patterson,* 9 Cal.App. 469 [99 P. 552].) The property owner thereafter had at most an offer enabling him to regain title to the property, which could be revoked by the state at any time before acceptance. As the court stated in *Buck* v. *Canty, supra,* "The Legislature has full control over the sale of property belonging to the state, which it may direct sold, and to regulate or change at any time the method of its disposition." (162 Cal. 226, 233.) In *South San Joaquin Irrigation District* v. *Neumiller,* 2 Cal.2d 485 [42 P.2d 64], the court reaffirmed the rule that the taxpayer had no vested right in the method adopted by the state for the disposition of its tax-deeded lands. The court declared: "The question is therefore narrowed to this: Does the person possessing a right to redeem also have a vested or such a substantial right in the method or conditions adopted by the state for the disposition

by it of its tax deeded lands as would deprive the state of the power to change the method and terms of sale thereof, after it had received title to the lands? . . . In the absence of constitutional limitations, and there is none here, the legislature is free to dispose of the state's tax deeded lands in any way deemed by it from time to time to be for the public interest. . . . It is clear from all the authorities and on reason that the person having the privilege of redemption has no right to the disposition by the state of its tax deeded lands in any particular way when, as here, his right of redemption is not adversely affected." (2 Cal.2d 485, 489. See *Allen* v. *Peterson*, 38 Wash. 599 [80 P. 849].)

Even if there were no distinction between the right to redeem before deed to the state and after, a change in the method of redemption would not necessarily be contrary to due process of law. While the law in effect at the time of the sale to the state governs the redemption of the property when the Legislature does not provide otherwise, it is settled that the Legislature may make retroactive changes in the method of redemption. (*Buck* v. *Canty, supra; Fox* v. *Wright, supra; Baird* v. *Monroe, supra; Wood* v. *Lovett, supra; League* v. *Texas*, 184 U.S. 156 [22 S.Ct. 475, 46 L.Ed. 478].) This power is not unlimited, however. The changes cannot be arbitrary or capricious but must be reasonable when measured in the light of the public interest to be served and the effect of the changes upon the rights of the property owner. Those rights are not purely statutory and cannot be destroyed by the mere repeal of a statute. ( *Cf.* Pol. Code, sec. 327; *Southern Service Co., Ltd.* v. *Los Angeles, supra; Penziner* v. *West American Finance Co.*, 10 Cal.2d 160 [74 P.2d 252]; *Krause* v. *Rarity*, 210 Cal. 644 [293 P. 62, 77 A.L.R. 1327]; *Berg* v. *Traeger*, 210 Cal. 323 [292 P. 495]; *Callet* v. *Alioto*, 210 Cal. 65 [290 P. 438]; *Moss* v. *Smith*, 171 Cal. 777 [155 P. 90]; *People* v. *Bank of San Luis Obispo*, 159 Cal. 65 [112 P. 866, Ann.Cas.1912B, 1148, 37 L.R.A.N.S. 934]; *Napa State Hospital* v. *Flaherty*, 134 Cal. 315 [66 P. 322].) At the time of the imposition of the tax the property is in private ownership, and the rights of the owner in that property, not being derived from statute, cannot be abrogated at will by the Legislature. When the tax is imposed the state prescribes the terms of payment and the conditions under which the property will be taken for nonpayment of the tax. By providing

for the redemption of the property after sale to the state in the event of delinquency, the state does not take the property outright from the owner but allows him not only to retain the title but the right to remove the tax lien and clear his title to the property. It does not follow that because the state could provide in the first instance for a complete taking of the property that it may with impunity provide retroactively for such a taking without giving the owner notice or a fair opportunity to prevent forfeiture of his property. (See *Wood* v. *Lovett,* 313 U.S. 362, 371 [61 S.Ct. 938, 85 L.Ed. 1404].)

█ It is settled, however, that the Legislature may validly limit the time within which an existing right may be exercised if the period remaining for its assertion is a reasonable one. (*Alexander, Inc.* v. *United States,* (C.C.A. 5th) 128 F.2d 82; *Allen* v. *Peterson, supra; Robinson* v. *Howe, supra; Muirhead* v. *Sands, supra.*) This rule is akin to the rule that the Legislature may enact a statute of limitations applicable to existing causes of action or shorten a former limitation period if the time allowed to commence the action is reasonable. (*Security-First Nat. Bank* v. *Sartori,* 34 Cal.App.2d 408, 414, 415 [93 P.2d 863]; see 16 Cal.Jur. 398; 34 Am.Jur. 44.)

█ In the present case the redemptioner clearly received adequate notice and a fair opportunity to regain the property. His position was in fact improved in several respects:

OLD METHOD

1. Right of redemption terminated by sale at any time upon proper notice.

2. Twenty-one days' notice by mail and by publication.

3. Right of redemption continues until terminated by sale; state not required to sell.

NEW METHOD

1. One year's delay before procedure became operative.

2. Four months' notice by mail before termination; notice by publication within 10 days after notice mailed.

3. Right of redemption must be terminated by June 1, 1943, if property not redeemed or installment payments begun before that time.

The delay of a year in the new procedure unquestionably operates to the advantage of the taxpayer. Likewise, a four-

months' notice is more advantageous to him than a twenty-one days' notice. As for the third difference, the Legislature could have provided that all tax-deeded property be sold by June 1, 1943, since it is free to determine what property shall or shall not be sold and when. (*Bray* v. *Jones*, 20 Cal.2d 858 [129 P.2d 364] ; *South San Joaquin Irrigation District* v. *Neumiller, supra; Buck* v. *Canty, supra; Merchants' Trust Co.* v. *Wright*, 161 Cal. 149 [118 P. 517] ; *Fox* v. *Wright, supra*.) From the standpoint of the redemptioner's right there is little if anything to choose between such a provision and the one in question. ▮ Any objection that the termination must be by sale is met by the holding in *South San Joaquin Irrigation District* v. *Neumiller, supra,* that the person having the privilege of redemption has no right to a particular kind of disposition of tax-deeded property. The state would normally seek to sell the property to return it to the tax rolls. While it may delay in doing so the taxpayer under the old method could not rely on such delay with any certainty and confidently bide his time to redeem. Any hope he might have had of redeeming advantageously by waiting rested on mere speculation as to what the state would do. It was not grounded in any legal right, for the state had the unqualified right to sell at any time and for any price and thus terminate the right of redemption. (*Buck* v. *Canty, supra; Fox* v. *Wright, supra; Baird* v. *Monroe, supra.*)

It was held in *South San Joaquin Irrigation District* v. *Neumiller, supra,* that the state can change the method of disposing of tax-deeded property after receiving the title thereto, by selling the property to a municipality, irrigation district, reclamation district, or other public corporation for such price and upon such terms as may be agreed upon and thereby terminate the right of redemption. It can likewise terminate the right of redemption by selling the property to a public corporation created to administer tax-deeded property. Just as appropriately the state can retain the property directly and terminate the right of redemption by giving the former owner as much notice as he would receive if the state sold the property to others.

In the cases upon which respondent relies the legislation in question either substantially impaired the right of redemption without reasonable justification or involved only questions of statutory construction. In *Teralta Land & W. Co.* v. *Shaffer*, 116 Cal. 518 [48 P. 613, 58 Am.St.Rep. 194], the new act increased the amount required to redeem. *Collier* v. *Shaf-*

*fer,* 137 Cal. 319 [70 P. 177], was concerned with the construction of the statute and not with the constitutionality of any retroactive application thereof. The new law involved in *Biaggi* v. *Ramont,* 189 Cal. 675 [209 P. 892], and *Risso* v. *Crooks,* 217 Cal. 219 [17 P.2d 1001], did not purport to be retroactive and its constitutionality was therefore not in question. *San Diego County* v. *Childs,* 217 Cal. 109 [17 P.2d 734], and *County of Los Angeles* v. *Rockhold,* 3 Cal.2d 192 [44 P.2d 340, 100 A.L.R. 149], concerned acts for refunding certain obligations of districts organized under the Acquisition and Improvement Act of 1925. They provided for radical changes in the right of property owners to redeem lands that had been sold for delinquent assessments, including reductions in the redemption period from five years to one year as well as additions to the amount necessary to redeem. (*Cf. County of Los Angeles* v. *Jones,* 6 Cal.2d 695 [59 P.2d 489]; *City of Dunsmuir* v. *Porter,* 7 Cal.2d 269 [60 P.2d 836]; *City of Los Angeles* v. *Aldrich,* 8 Cal.2d 541 [66 P.2d 647]; *Culver City* v. *Reese,* 11 Cal.2d 441 [80 P.2d 992].)

*King* v. *Samuel,* 7 Cal.App. 55 [93 P. 391]; *Wetherbee* v. *Johnston,* 10 Cal.App. 264 [101 P. 802], and *Main* v. *Thornton,* 20 Cal.App. 194 [128 P. 766], were based upon *Johnson* v. *Taylor,* 150 Cal. 201 [88 P. 903, 119 Am.St.Rep. 181, 10 L.R.A.N.S. 818], upon which the defendant relies particularly. This case involved the validity of a tax deed made in 1899 pursuant to a sale in 1894. Under the law in effect when the sale was made the purchaser had to serve written notice upon the owner or occupant thirty days before the right of redemption expired or thirty days before applying for a deed. A deed could not be issued to the purchaser without the giving of this notice. The owner retained title until the execution of such deed and had at least one year after the sale and until thirty days after notice in which to redeem. In 1895 the Legislature adopted substantially the present system, providing that property be sold for delinquent taxes to the state, and if not redeemed within five years be deeded to the state, and that thereafter redemption might be made before entry or sale of the property by the state. In referring to this change the court declared: ''To change a right of redemption which lasts indefinitely until the performance by a third party of some act which may or may not be performed, to a right limited by the expiration of a definite period of time is a substantial change in the right.'' Re-

spondent relies heavily upon this sentence, inferring a comparison between the right to redeem after deed to the state until the state sells, with the right under the old law in the Johnson case to redeem within thirty days after the service of the notice. Actually the court found no basis for such a comparison, for it clearly regarded the right of redemption after the close of the five-year period as too insubstantial to be measured against the previously existing right, and measured instead the five-year period, only to find it also inferior. It would be inconsistent now to give the right formerly regarded ·as insubstantial the same value as the right formerly regarded as impaired. Even if the sentence in the Johnson case, relied upon by respondent, were lifted from the context of 'the facts before the court and read literally it would have no bearing upon the present case, where the right of redemption under the old law was terminated by the act, not of a third person without title to the property, but of the state itself as holder of the absolute title. (*South San Joaquin Irrigation District* v. *Neumiller, supra.*) The Johnson case involved the basic right of a property owner to receive notice of the prospective loss of title to his property. The notice did not terminate the right of redemption as sale by the state did, but gave warning that the right would be terminated if the owner did not redeem. "Under the old law the owner could rest secure until he received notice of intention to apply for a deed. He then had thirty days in which to redeem. Under the new law his right of redemption could be cut off at any moment after the expiration of the statutory period, without any personal notification to him . . . That these circumstances worked a substantial change in the rights which the owner had at the date of the sale seems clear." The impairment of the right in the Johnson case is in striking contrast to the absence of any proof of impairment in the present case.

Let a peremptory writ of mandate issue.

Gibson, C. J., and Schauer, J., concurred.

EDMONDS, J. concurring.—I agree that a delinquent taxpayer has no vested right in an existing procedure for the collection of taxes. (*Wood* v. *Lovett,* 313 U.S. 362, 371 [61 S.Ct. 938, 85 L.Ed. 1404]; *League* v. *Texas,* 184 U.S. 156, 158 [22 S.Ct. 475, 46 L.Ed. 478].) There is no contract between him and the state that the latter will not vary the method of·

collection. (*Wood* v. *Lovett, supra,* p. 371; *League* v. *Texas, supra,* p. 158.) Nor does a statute changing the procedure for the collection of unpaid taxes conflict with the due process clause of the Fourteenth Amendment to the federal Constitution merely because it is retroactive in operation. (*League* v. *Texas, supra,* p. 161; *Wood* v. *Lovett, supra,* p. 371.) For these reasons the Supreme Court of the United States has held that a state constitutionally may impose interest upon delinquent taxes by a law enacted subsequent to the time of their accrual. (*League* v. *Texas, supra.*)

The due process clause does, however, prevent the state from taking one's liberty or property in an unreasonable and arbitrary manner. The private ownership of real property normally does not exist by virtue of a statutory grant, and the owner is entitled to notice of the fact that his property will be forfeited if he is delinquent in his obligations to the state. Prior to the enactment of the 1941 legislation, under the law governing the collection of taxes, the landowner was informed that only certain rights in his property immediately would be taken if he failed to pay the taxes levied upon it when due; that certain additional rights would be taken upon a default in payment of his tax obligations during the next five years, and his title forfeited if he did not pay the accrued amounts before the property was sold for taxes by the state to another. (Rev. & Tax. Code, pts. 6, 7.) And although no constitutional limitation requires the state to abide by these conditions for the collection of the tax, procedural due process demands that it must, in altering the procedure, give adequate notice of the change so as to afford the taxpayer a fair opportunity to prevent forfeiture of his property. (*Wood* v. *Lovett, supra,* p. 371; *League* v. *Texas, supra,* p. 158; and see *Brinkerhoff-Faris Trust & Savings Co.* v. *Hill,* 281 U.S. 673 [50 S.Ct. 451, 74 L.Ed. 1107].)

Sections 3571-78 of the Revenue & Taxation Code are in accord with these principles. They do not arbitrarily deprive the delinquent taxpayer of his remaining interest in his property but afford him adequate notice that his rights will be terminated if he does not cure his default within a period which affords him a fair opportunity to prevent the forfeiture. The Constitution requires nothing more in this regard.

I am not, however, convinced that the new legislation has improved the delinquent taxpayer's position or conferred upon him benefits equally as advantageous as those existing

under the prior procedure. To me, the declaration of Mr. Justice Traynor to this effect is patently inconsistent with his statement that the new policy embodies a plan to classify and rehabilitate tax-deeded property by expediting the restoration of real property to the tax rolls through the termination of the theretofore continuing right of redemption. Whether a change from a conditional right of redemption which might continue indefinitely and, in any event, may not be terminated until after 21 days' notice is less desirable than an unconditional right to redeem within one year from the date the 1941 legislation became effective, is a question upon which reasonable minds may differ. I therefore place my concurrence in the judgment upon the sole ground that the new procedure is a reasonable regulation of the method for collection of taxes by the state.

CARTER, J., concurring.—The question presented for consideration is whether section 3574 of the Revenue and Taxation Code, adopted by the Legislature in 1941, imposes more onerous conditions upon the right to redeem property from a delinquent tax sale made prior to the adoption of such section, and if so, did the Legislature have the power to impose such conditions so as to affect the right of redemption of property covered by such prior sales?

In my opinion, said section does impose more onerous conditions on the right of redemption, as it purports to limit the time within which redemption may be made to a period of four months after notice instead of permitting the owner to exercise the right of redemption at any time until the property is sold by the state to a third person. Such being the case, I shall proceed with the consideration of the question as to whether or not the Legislature had the power to impose such conditions so as to affect tax sales made prior to the adoption of such section.

This court has held in numerous cases, and it appears to be in agreement with the weight of authority, that the general relationship of sovereign and taxpayer is not founded on, nor does it create, any contractual rights; and the obligation of the citizen to pay taxes is purely of statutory creation, and taxes can be levied, assessed and collected only in the method provided by express statute. (*Southern Service Co., Ltd.* v. *Los Angeles,* 15 Cal.2d 1, 11 [97 P.2d 963]; *Perry* v. *Washburn,* 20 Cal. 318; *Spurrier* v. *Neumiller,* 37 Cal.App. 683 [174 P. 338].) It has also been held by this court that the

power of taxation is not founded upon consent or agreement but, rather, that tax proceedings are *in invitum,* and has given that as its reason why all tax proceedings should be strictly construed. Judge Cooley in his work on taxation points out that as between the owner of property and the sovereign power imposing the tax there is no relationship based upon contract and that as to the owner, "the remedy by redemption which the statute gives him, like remedies in general, is subject to legislative discretion." (Cooley on Taxation, vol. 4, 4th ed., sec. 1561, p. 3068.)

Section 327 of the Political Code reads as follows:

"Any statute may be repealed at any time, except when it is otherwise provided therein. Persons acting under any statute are deemed to have acted in contemplation of this power of repeal."

It appears to be well settled in this state that the right of recovery upon a purely statutory right can be impaired or abrogated without violation of any right guaranteed by the state or federal Constitutions. (*Southern Service Co., Ltd.* v. *Los Angeles, supra; Penziner* v. *West American Finance Co.,* 10 Cal.2d 160 [74 P.2d 252]; *Krause* v. *Rarity,* 210 Cal. 644 [293 P. 62, 77 A.L.R. 1327]; *Berg* v. *Traeger,* 210 Cal. 323 [292 P. 495]; *Callet* v. *Alioto,* 210 Cal. 65 [290 P. 438]; *Moss* v. *Smith,* 171 Cal. 777 [155 P. 90]; *People* v. *Bank of San Luis Obispo,* 159 Cal. 65 [112 P. 866, Ann.Cas.1912B 1148, 37 L.R.A.N.S. 934]; *Napa State Hospital* v. *Flaherty,* 134 Cal. 315 [66 P. 322].)

The rule established by these cases is clearly stated by this court in the case of *Krause* v. *Rarity, supra,* at page 652, as follows:

"The defendant Rarity contends that by reason of the enactment of the foregoing statute the cause of action of the plaintiffs has been wiped out; that section 377 of the Code of Civil Procedure and section 2096 of the Civil Code have been repealed in whole or in part by the enactment of section 141¾ of the California Vehicle Act and that the rule of law to be applied is laid down in such cases as *People* v. *Bank of San Luis Obispo,* 159 Cal. 65 [Ann.Cas.1912B 1148, 37 L.R.A. N.S. 934, 112 P. 866]; *Wilcox* v. *Edwards,* 162 Cal. 455 [Ann.Cas.1913C 1392, 123 P. 276]; *Moss* v. *Smith,* 171 Cal. 777 [155 P. 90]; *Freeman* v. *Glenn County Tel. Co.,* 184 Cal. 508 [194 P. 705], and *Chenoweth* v. *Chambers,* 33 Cal.App. 104 [164 P. 428]. By those cases the rule obtaining elsewhere

has become thoroughly established in the law of this state that when a right of action does not exist at common law, but depends solely upon a statute, the repeal of the statute destroys the right unless the right has been reduced to final judgment or unless the repealing statute contains a saving clause protecting the right in a pending litigation. In the case at bar the cause of action depended solely on the statute. There is no saving clause and the action is still pending.''

In the case of *Napa State Hospital* v. *Flaherty, supra,* at page 317, the rule is thus stated:

"It is a rule of almost universal application that, where a right is created solely by a statute, and is dependent upon the statute alone, and such right is still inchoate, and not reduced to possession, or perfected by final judgment, the repeal of the statute destroys the remedy, unless the appealing statute contains a saving clause.''

It appears to be a rule of universal acceptation that the clause of the federal Constitution and those of the several state Constitutions prohibiting the impairment of obligations of contracts runs only to conventional contracts created by the mutual consent of the parties and not to quasi-contractual obligations imposed by the law and without procuring the consent of the party to be charged. (*Louisiana* v. *Mayor of New Orleans,* 109 U.S. 285 [3 S.Ct. 211, 27 L.Ed. 936]; *Freeland* v. *Williams,* 131 U.S. 405 [9 S.Ct. 763, 33 L.Ed. 193]; *Garrison* v. *City of New York,* 21 Wall. 196, at 203 [22 L.Ed 612]; *Crane* v. *Hahlo,* 258 U.S. 142, 146 [42 S.Ct. 214, 66 L.Ed. 514, 517]; *Read* v. *Mississippi County,* 69 Ark. 365 [63 S.W. 807, 86 Am.St.Rep. 202] (aff'd. 188 U.S. 739 [23 S.Ct. 849, 47 L.Ed. 677]); *State* v. *New Orleans,* 38 La.Ann. 119 [58 Am.Rep. 168]; *Love* v. *Cavett,* 26 Okla. 179 [109 P. 553]; *Nottage* v. *City of Portland,* 35 Ore. 539 [58 P. 883, 76 Am.St.Rep. 513]; *Anders* v. *Nicholson,* 111 Fla. 849 [150 So. 639]; *State* v. *Smith,* 58 S.D. 22 [234 N.W. 764].)

I am persuaded by the reasoning contained in the foregoing authorities that the tax liability of the owner of property is not predicated upon contract; that it is wholly of statutory creation and all rights and privileges granted to the property owner in connection therewith, including the enforcement of such rights, are founded upon statutory enactment, and such rights may be limited or entirely abrogated by the Legislature without violating constitutional provisions prohibiting the impairment of obligations of contracts.

Respondent relies most strongly upon the case of *Teralta Land & Water Co.* v. *Shaffer,* 116 Cal. 518 [48 P. 613, 58 Am.St.Rep. 194], in support of his contention that section 3574 of the Revenue Taxation Act is unconstitutional as being in violation of the impairment of contracts clauses of the state and federal Constitutions. While that case contains language supporting respondent's position, it does not go as far as is necessary to support the position taken by respondent in this case. The reasoning of the Teralta case was based upon decisions from other states and opinions of text writers dealing with the rights of purchasers from the state of tax-deeded lands. There can be no question but that such transactions rested upon contract and the rights of the purchasers therein were contractual and vested under ordinary common-law principles. The rule announced in the Teralta case is thoroughly sound, but was not applicable to the set of facts then before the court. The difference between sales to the state and sales to individuals has been discussed by this court in the case of *Anglo California Nat. Bank* v. *Leland,* 9 Cal.2d 347 [70 P.2d 937]. But such distinction was not drawn in the Teralta case. An examination of the authorities relied upon in the Teralta case discloses that they do not support a rule applicable to the facts of that case. The decisions from other states are cited without any statement of facts, and with only one quotation from the cases and, hence, their inapplicability to the particular facts then before this court is not apparent until such cases are read and analyzed. The cases of *Merrill* v. *Dearing,* 32 Minn. 479 [21 N.W. 721] ; *Robinson* v. *Howe,* 13 Wis. 380 (cited in the opinion as 13 Wis. 341), *Conway* v. *Cable,* 37 Ill. 82 [87 Am.Dec. 240], and *Wolfe* v. *Henderson,* 28 Ark. 304, all involved situations where the property was conveyed by tax deed to an individual rather than to a state. In addition, the Wisconsin case involved an extension of time to redeem rather than a shortening of the period, and the Arkansas case actually turned upon a question of statutory construction. The other Minnesota case, *Goernen* v. *Schroeder,* 8 Minn. 344 (cited in the opinion as 8 Minn. 387), did not involve a tax deed at all but involved a mortgage. The Iowa case, *Negus* v. *Yancey,* 22 Iowa 57, not only fails to support the Teralta case but holds quite to the contrary. True, the last cited case holds that the law in effect at the time of the sale controls, but the problem before the court did not involve a change in the

law after the sale but a change in the law before the sale, and the question was whether the law at the time taxes accrue or the law in effect at the time of the sale should control. The court held that the redemptioner was bound by the change in the law, . . . the reason given, at page 59 of the opinion, being, "He (the redemptioner) has no vested rights or privileges in the terms or provisions of the law under which he is a defaulter."

The case of *Moody* v. *Hoskins*, 64 Miss. 468 [1 So. 622], involved a situation where the right of redemption was terminated instantly by the repeal of a redemption statute without allowing a reasonable time, or any time, for the taxpayer to save his property. The court, without any citation of authority and relying only upon the injustice of such a statute, held it to be invalid. The other Mississippi case, *Caruthers* v. *McLaran*, 56 Miss. 371, involved only a question of statutory construction.

Thus we find that not one of the cases cited supports the conclusion reached in the Teralta case, but, to the extent that they are applicable at all, go no further than to hold that where a tax sale is made to a private party, contractual and vested rights arise. And one case, not involving a deed to an individual, expressly held that the redemptioner was bound by the change in the law (*Negus* v. *Yancey, supra.*)

It is quite apparent, therefore, that the line of decisions represented by the Teralta case resulted from a failure to distinguish between sales to the state and sales to private parties, and that the distinction noted by this court in the Anglo California National Bank case requires the overruling of the Teralta case.

The precise problem involved in this case was recently considered by the Supreme Court of Michigan (*Baker* v. *State Land Office Board* (1940), 294 Mich. 587 [293 N.W. 763]). In that case the court said at page 767:

"Nor is Act No. 206, Pub. Acts 1893, as amended, unconstitutional as an ex post facto law, impairing the obligation of contract, as claimed by petitioner. Under the express provisions of the general property tax law of 1893, as amended by Act No. 325, Pub. Acts 1937, title to all lands within the borders of the State that had been sold and bid in by the State became vested in the State upon expiration of the 18-month period of redemption. It is contended that prior to the amending act the period of redemption was five years; that

such an amendment, cutting off title of the owners in a lesser period of time, cannot apply retrospectively to taxes levied before the amendment. Counsel apparently refers to 1 Comp. Laws 1929, sec. 3520, as amended by Act No. 250, Pub. Acts 1933, which requires that lands be delinquent in taxes for a period of five years before the State can acquire title. The right of redemption, however, is not a constitutional right, but exists only as permitted by statute. *Keely* v. *Sanders*, 99 U.S. 441, 25 L.Ed. 327; *Dumphey* v. *Hilton*, 121 Mich. 315, 80 N.W. 1. Laws of retroactive character, affecting tax liens which attached prior to such an enactment, are not unconstitutional. *City of Detroit* v. *Safety Investment Corp.*, 288 Mich. 511, 285 N.W. 42; and statutes affecting such liens, shortening the time previously fixed for sale or redemption, affect only a remedy for the delinquency of the taxpayer and do not impair contract obligations or vested rights. See *Muirhead* v. *Sands*, 111 Mich. 487, 69 N.W. 826; *Board of Supervisors* v. *Hubinger*, 137 Mich. 72, 100 N.W. 261, Ann.Cas. 792; *Harsha* v. *City of Detroit*, 261 Mich. 586, 246 N.W. 849, 90 A.L.R. 853.''

In conclusion, and to summarize the views expressed in the foregoing opinion, the relationship of sovereign and taxpayer is purely statutory and is not founded on contract, and the Legislature has the power at its discretion to change the mode or method of assessing, levying and collecting taxes, including the termination of the owner's right of redemption from delinquent tax sales; that section 3574 of the Revenue and Taxation Code does not constitute a violation of any constitutional provision and is a valid exercise of the legislative power; that the case of *Teralta Land & Water Co.* v. *Shaffer*, 116 Cal. 518 [48 P. 613, 58 Am.St.Rep. 194], and any other cases in this state which purport to follow the erroneous doctrine announced in that case should be overruled, and that petitioner is entitled to the writ of mandate prayed for in its petition in this case.

SHENK, J.—I dissent. In my opinion the legislation under consideration provides for a shortening of the period of redemption fixed by the law in force at the time of the sale for delinquent taxes. The question whether the shortening of that period is a substantial impairment of the redemptioner's right cannot be answered by the citation of cases which declare that the Legislature may change the method of re-

demption. It is not the method, but the period of redemption which is involved. Neither may it properly be said that the right of the redemptioner is amplified because he is given more notice when his period of redemption is terminated by public declaration than when it is terminated by sale to a third person. Such a pronouncement assumes the point in issue, namely, that the redemptioner's right may be cut off at an earlier time than that provided by the law in force at the time of the sale to the state.

The case of *South San Joaquin Irrigation District* v. *Neumiller*, 2 Cal.2d 485 [42 P.2d 64], relied on by the majority, involved only the question whether the state could dispose of its tax-deeded lands at private sale for cash or on credit. The decision in that case was that the redemptioner had no right to the disposition by the state of its tax-deeded lands in any particular way when his right of redemption was not adversely affected. This court there expressly recognized that the question of the legislative power to shorten the period of redemption was not involved.

The rule that the law in force at the time of the sale for delinquent taxes governs the right of redemption and that the shortening of the period of redemption is a substantial impairment of that right has been the law of this state from an early period. It became and has remained a rule of property. Tax deeds have been voided for failure to comply with it, and real property titles have been adjusted on the strength of it. The cases are legion on the subject, a few of which are the following: *Teralta Land etc. Co.* v. *Shaffer*, 116 Cal. 518 [48 P. 613, 58 Am.St.Rep. 194]; *Collier* v. *Shaffer*, 137 Cal. 319, 321 [70 P. 177]; *Johnson* v. *Taylor*, 150 Cal. 201 [88 P. 903, 119 Am.St.Rep. 181, 10 L.R.A.N.S. 818]; *Biaggi* v. *Ramont*, 189 Cal. 675 [209 P. 892]; *County of San Diego* v. *Childs*, 217 Cal. 109 [17 P.2d 734]; *Risso* v. *Crooks*, 217 Cal. 219 [17 P.2d 1001]; *County of Los Angeles* v. *Rockhold*, 3 Cal. 2d 192, 203-205 [44 P.2d 340, 100 A.L.R. 149]; *King* v. *Samuel*, 7 Cal.App. 55 [93 P. 391]; *Wetherbee* v. *Johnston*, 10 Cal.App. 264 [101 P. 802]; *Main* v. *Thornton*, 20 Cal.App. 194 [128 P. 766].

The peremptory writ should be denied.

Curtis, J., concurred.